1  ANTHONY L. FRANÇOIS, Cal. Bar No. 184100
   E-mail: TFrancois@pacificlegal.org
2  TIMOTHY R. SNOWBALL, Cal. Bar No. 317379
   E-mail: TSnowball@pacificlegal.org
3  Pacific Legal Foundation
   930 G Street
4  Sacramento, California 95814
   Telephone: (916) 419-7111
5  Facsimile: (916) 419-7747

6  JAMES M. MANLEY, Ariz. Bar No. 031820* (*Pro Hac Vice*)
   E-mail: JManley@pacificlegal.org
7  Pacific Legal Foundation
   3241 E. Shea Blvd., # 108
8  Phoenix, Arizona 85028
   Telephone: (916) 288-1405
9  Facsimile: (916) 419-7747

10  Attorneys for Plaintiffs

11              UNITED STATES DISTRICT COURT

12             EASTERN DISTRICT OF CALIFORNIA

13                   FRESNO DIVISION

14

15  PETER  STAVRIANOUDAKIS;  KATHERINE        No. 1:18-cv-01505-NONE-BAM
    STAVRIANOUDAKIS;   SCOTT   TIMMONS;
16  ERIC ARIYOSHI; **and** AMERICAN FALCONRY        **SECOND AMENDED**
    CONSERVANCY,                                      **COMPLAINT FOR**
17                                                    **DECLARATORY AND**
                  Plaintiffs,                         **INJUNCTIVE RELIEF**
18
        v.
19

20  UNITED STATES FISH & WILDLIFE SERVICE;
    CHARLTON H. BONHAM, in his official capacity
21  as Director of California Department of Fish and
    Wildlife; **and** AURELIA SKIPWITH, in her
22  official capacity as Director of United States Fish &
    Wildlife Service,
23
                  Defendants.
24

25

26

27
    *Licensed to practice law in Arizona and Colorado. Not licensed to practice law in California.
28

Second Amended Complaint for Declaratory and Injunctive Relief
No. 1:18-cv-01505-NONE-BAM

**INTRODUCTION**
**CIVIL RIGHTS COMPLAINT FOR**
**DECLARATORY AND INJUNCTIVE RELIEF**

Plaintiffs Peter Stavrianoudakis, Eric Ariyoshi, Scott Timmons, American Falconry Conservancy ("Falconers"), and Katherine Stavrianoudakis ("Katherine"), by and through undersigned counsel, bring this Second Amended Complaint, filed pursuant to this Court's January 24, 2020 Order, ECF 59 at 54, for declaratory and injunctive relief, and allege as follows:

**JURISDICTION & VENUE**

1.      This Court has subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331 (federal question jurisdiction) and 1343 (jurisdiction to redress deprivations of civil rights), and the Civil Rights Act of 1871, 42 U.S.C. § 1983.

2.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because this judicial district is one in which a defendant is subject to the court's personal jurisdiction.

3.      The Court has authority to provide the relief requested under the Fourth Amendment, First Amendment, Fourteenth Amendment, 28 U.S.C §§ 2201 & 2202 (Declaratory Judgment Act), 42 U.S.C. § 1983, and its inherent equitable powers.

4.      Defendant Charlton Bonham is Director of the California Department of Fish and Wildlife, and is a "person" within the meaning 42 U.S.C. § 1983. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 n.10 (1989).

**INTRODUCTION**

5.      The First and Fourth Amendments contain some of the most important and well-protected individual civil liberties contained in the United States Constitution, and constrain both federal officials and, through the Fourteenth Amendment, state officials.

6.      Falconry is the art of housing, tending, training, flying, and hunting with birds of prey, such as falcons, hawks, and eagles.

7.      In 2008, ostensibly for the purpose of regulating the "taking, possessing, purchasing, bartering, [or] selling" certain birds of prey pursuant to the Migratory Bird Treaty Act, 16 U.S.C. § 703, *et seq.*, and the Bald and Golden Eagle Protection Act, 16 U.S.C. § 668, *et seq.*, the U.S. Fish and Wildlife Service promulgated regulations governing falconry. *See* 50 C.F.R. § 21.29(a).

8.     The Migratory Bird Treaty Act grants Defendants the "authority, with a search warrant, to search any place" and by plain implication denies the authority to search without a warrant. 16 U.S.C. § 706.

9.     Neither the Migratory Bird Treaty Act nor the Bald and Golden Eagle Protection Act grant Defendants the authority to conduct warrantless searches of private property or regulate falconers' speech.

10.     The federal regulations include 50 C.F.R. § 21.29(b)(4)(i), which authorizes Defendants to conduct warrantless searches of falconry "facilities" to ensure that the "facilities standards" in § 21.29 are met, and 50 C.F.R. § 21.29(d)(2) and (d)(9), which grant state officials the power to conduct warrantless searches of the "equipment and records" of falconers.

11.     The federal regulations also include 50 C.F.R. § 21.29(f)(8)–(9), which prohibit falconers from photographing or filming their birds to make movies, commercials, or in other commercial ventures unrelated to falconry, limit compensation for falcon-related educational speech, and dictate the content of conservation education programs.

12.     The federal regulations encourage states to create licensing and regulatory schemes consistent with the federal regulations. Any state rules must be at least as restrictive as the federal rules. 50 C.F.R. § 21.29(b).

13.     Pursuant to 50 C.F.R. § 21.29(b), California promulgated falconry regulations in 2014, including 14 C.C.R. § 670(h)(13)(A), which contains substantively identical speech restrictions as those contained in the federal regulations, and further bans any compensation of falconers' speech if the "fees charged, compensation, or pay received … exceed the amount required to recover costs."

14.     In 2017, the California regulations were amended to include 14 C.C.R. § 670(j)(3)(A), which authorizes warrantless searches of falconry "facilities, equipment, or raptors possessed" by licensees, including the power to "inspect, audit, or copy any permit, license, book[,]" or other required record.

///

///

15.     As a condition of receiving their licenses to practice falconry in California, Falconers are required to waive their Fourth Amendment rights and allow warrantless searches of their "falconry facilities" and "equipment and records." 14 C.C.R. § 670(j)(1)(D)–(3).

16.     The vast majority of licensed falconers, including the Falconers in this case, keep their birds housed either within their private homes, or within falconry weathering structures called mews located directly adjacent to their private homes.

17.     Housing falcons within private homes or within protected curtilage is the common practice among licensed falconers.

18.     As a result of the challenged regulations, Falconers' and Katherine's private homes, protected curtilage, and protected papers and effects, are subject to unreasonable warrantless searches.

19.     Warrantless searches of Falconers' private homes and property, and specifically American Falconry Conservancy members' private homes and property, by Defendants is widespread and on-going.

20.     This suit seeks to vindicate the rights of Falconers to be free from the imposition of an unconstitutional condition on their falconry licenses, and for Falconers and Katherine to be secure in their private homes and curtilage against unreasonable warrantless searches by armed government agents under the Fourth Amendment, and Falconers their rights to freedom of speech under the First Amendment.

21.     Falconers and Katherine will suffer the continued deprivation of their constitutional rights due to the continual enforcement of the unconstitutional condition and rules complained of herein by state and federal officials, unless the regulations challenged herein are declared unconstitutional and unlawful and Defendants are enjoined from enforcing them.

22.     This action alleges both as-applied and facial challenges to the relevant regulations, and seeks wholly prospective declaratory and injunctive relief and no monetary damages against any party.

23.      "[F]acial challenges under the Fourth Amendment are not categorically barred or especially disfavored." *City of Los Angeles, Calif. v. Patel*, 135 S. Ct. 2443, 2449 (2015).

**PARTIES**

24.     Plaintiff Peter Stavrianoudakis is a United States citizen, Deputy Public Defender for Stanislaus County, and President of American Falconry Conservancy. He resides in Hilmar, California, and was first licensed as a falconer over 30 years ago. He is a Master Falconer.

25.     Plaintiff Katherine Stavrianoudakis is a United States citizen and a Service Coordinator for Valley Mountain Regional Center, a nonprofit that provides services for the developmentally disabled. She resides in Hilmar, California, and is married to and lives in the same residence as Plaintiff Peter Stavrianoudakis. She does not have a falconry license and has not purported to waive her Fourth Amendment rights, but is still subject to the same intrusive unreasonable warrantless searches of her home and curtilage by Defendants as her husband.

26.     Plaintiff Eric Ariyoshi is a United States citizen, Marketing Director for a California winery, and Secretary for American Falconry Conservancy. He resides in Novato, California, and has been a licensed falconer for 20 years.

27.     Plaintiff Scott Timmons is a United States citizen, and owner of Aerial Solutions, a small privately owned abatement company, and a member of American Falconry Conservancy. He resides in Lompoc, California, and has been licensed as a falconer for 30 years. He has been licensed to use falcons in professional abatement for more than 10 years. Abatement is the practice of flying certain species of raptor over a given area as a deterrent to the presence of other invasive bird species. Abatement is important in the prevention of nuisance caused by seagulls and other bird species at landfills and near airports.

28.     Plaintiff American Falconry Conservancy is a membership organization established in 2002 and composed of approximately 100 members across the United States. American Falconry Conservancy is dedicated to protecting and preserving the practice of falconry, and protecting falconers' rights.

29.     Defendant Aurelia Skipwith is Director of the U.S. Fish and Wildlife Service. In her capacity as Director of the U.S. Fish and Wildlife Service she is charged with enforcing the federal warrantless search and speech regulations challenged in this lawsuit. By enforcing the policies complained of in this action, she is currently depriving Falconers of their rights to be free from the

1   imposition of an unconstitutional condition, Falconers' and Katherine's right to be free from

2   unreasonable warrantless searches of their private property, and Falconers' rights to freedom of

3   speech guaranteed by the United States Constitution, and will continue to do so absent this Court's

4   injunction. Defendant Skipwith is sued in her official capacity.

5       30.     Defendant Charlton Bonham is Director of the California Department of Fish and

6   Wildlife. In his capacity as Director of the California Department of Fish and Wildlife he is charged

7   with enforcing the California and federal warrantless search and speech regulations challenged in

8   this lawsuit. By enforcing the policies complained of in this action, he is currently depriving

9   Falconers of their rights to be free from the imposition of an unconstitutional condition, Falconers'

10  and Katherine's right to be free from unreasonable warrantless searches of their private property,

11  and Falconers' rights to freedom of speech guaranteed by the United States Constitution, and will

12  continue to do so absent this Court's injunction. Defendant Bonham is sued in his official capacity.

13      31.     Defendant U.S. Fish and Wildlife Service is responsible for creating and enforcing

14  the federal warrantless search and speech regulations challenged in this lawsuit. By enforcing the

15  policies complained of in this action, it is currently depriving Falconers of their rights to be free

16  from the imposition of an unconstitutional condition, Falconers' and Katherine's right to be free

17  from unreasonable warrantless searches of their private property, and Falconers' rights to freedom

18  of speech guaranteed by the United States Constitution.

19                          **LEGAL BACKGROUND**

20  **Doctrine of Unconstitutional Conditions**

21      32.     The unconstitutional conditions doctrine limits the government's ability to require

22  waivers of federally protected rights as a condition of receiving a public benefit. *Dolan v. City of*

23  *Tigard*, 512 U.S. 374, 385 (1994).

24      33.     "Broadly stated, the rule is that the right to continue the exercise of a privilege

25  granted by the state cannot be made to depend upon the grantee's submission to a condition

26  prescribed by the state which is hostile to the provisions of the federal Constitution." *United States*

27  *v. Chicago, M., St. P & P Railway Co.*, 282 U.S. 311, 328–29 (1931).

28  ///

34.     The doctrine of unconstitutional conditions prevents this indirect deprivation of a constitutional right even when the underlying benefit is fully discretionary, and the government could withhold the benefit altogether. *Perry v. Sindermann*, 408 U.S. 593, 597 (1972); *see also United States v. Scott*, 450 F.3d 863, 866 (2006).

35.     Thus, government cannot achieve "end-runs  around  the  barriers  to  direct commands" by granting itself the same unconstitutional power as a condition on a public benefit, like a license. *See* Kathleen M. Sullivan, Unconstitutional Conditions, 102 Harv. L. Rev. 1413, 1492 (1989).

36.     "The doctrine [of unconstitutional conditions] is especially important in the Fourth Amendment context." *Scott*, 450 F.3d at 867.

**Falconry Licenses Are Conditioned on Fourth Amendment Waivers**

37.     California falconry regulations condition receipt of a falconry license on a waiver of the Fourth Amendment right to be free of unreasonable warrantless searches of private homes, curtilage, and other protected papers and effects. 14 C.C.R. § 670(j)(3)(A); 50 C.F.R. § 21.29(b)(4)(i).

38.     On the application to receive a falconry license, applicants must explicitly acknowledge and certify that they "understand that [their] facilities, equipment, or raptors are subject to unannounced inspection pursuant to Section 670(j), Title 14, of the CCR. [And] certify that [they] have read, understand, and agree to abide by all conditions of this license, the applicable provisions of the FGC, and the regulations promulgated thereto." California Department of Fish and Wildlife, Falconry License Application. https://wildlife.ca.gov/Licensing/Falconry.

39.     Licensed falconers are thus forced, in violation of the doctrine of unconstitutional conditions, to waive their Fourth Amendment rights in order to receive their licenses.

40.     Falconry license holders are required to renew their licenses annually, 14 C.C.R. § 670(a)(1); 14 C.C.R. § 670(e)(4); 50 C.F.R. § 21.29(c)(1)(i), and as a consequence suffer a fresh cognizable injury every time they renew their licenses.

///

///

**The Fourth Amendment Forbids Unreasonable Warrantless Searches**

41.     The Fourth Amendment protects "persons, houses, papers, and effects" from unreasonable warrantless searches by government agents. U.S. Const. amend IV.

42.     Reasonableness under the Fourth Amendment is generally satisfied by securing a search warrant, based upon probable cause, from a neutral magistrate. *Vernonia School Dist. 47J v. Acton*, 515 U.S. 646, 653 (1995).

43.     The Supreme Court has repeatedly held that "[i]t is a 'basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable.'" *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006) (quoting *Groh v. Ramirez*, 540 U.S. 551, 559 (2004)).

44.     All "'searches conducted outside the judicial process, without prior approval by [a] judge or [a] magistrate [judge], are *per se* unreasonable ... subject only to a few specifically established and well-delineated exceptions.'" *Patel*, 135 S. Ct. at 2452.

45.     Under the privacy-based approach to the Fourth Amendment, a search warrant is required for government searches where (1) a person has exhibited an actual (subjective) expectation of privacy in the area searched, and (2) the expectation is one that society is prepared to recognize as reasonable. *Katz v. United States*, 389 U.S. 347, 361 (1967) (Harlan, J., concurring).

46.     Under Fourth Amendment privacy analysis, private homes and curtilage enjoy a strong presumption of privacy. *See Kyllo v. United States*, 533 U.S. 27, 34 (2001); *Camara v. Municipal Court of the City and County of San Francisco*, 387 U.S. 523 (1967).

47.     Property rights also provide an independent basis for requiring a warrant under the Fourth Amendment. *See, e.g.*, *Collins v. Virginia*, 138 S. Ct. 1663 (2018); *Florida v. Jardines*, 569 U.S. 1 (2013); *United States v. Jones*, 565 U.S. 400 (2012).

48.     Where the government crosses a real property line with an investigatory purpose without a warrant, it has committed a cognizable trespass that can be redressed under the Fourth Amendment. *Id.* at 406 ("[F]or most of our history the Fourth Amendment was understood to embody a particular concern for government trespass upon the areas ('persons, houses, papers, and effects') it enumerates.").

**Federal and California Unreasonable Warrantless Search Regimes**

49.  Under 50 C.F.R. § 21.29(b)(4)(i), Defendants purport to authorize themselves to search Falconers' facilities, which per the common practice of falconry are actually private homes or mews located within protected curtilage, without a warrant "to ensure that the facilities standards" in § 21.29 are met.

50.  50 C.F.R. § 21.29(d)(2) and (d)(9) grant state officials the purported power to conduct warrantless searches of the "equipment and records" of Plaintiff falconers.

51.  14 C.C.R. § 670(j)(3)(A), authorizes warrantless searches of falconry "facilities, equipment, or raptors possessed" by licensees, including the power to "inspect, audit, or copy any permit, license, book[,]" or other required record.

52.  Falconers' falconry "facilities," are located within private homes or structures within the protected curtilage of private homes, as are the targeted "equipment and records."

53.  Falconers' birds, falconry equipment, and records are also "papers and effects" protected by the Fourth Amendment.

**The First Amendment Presumptively Prohibits Content-Based Speech Restrictions**

54.  The First Amendment protects the right of free speech by commanding that "Congress shall make no law … abridging the freedom of speech." U.S. Const. amend. I.

55.  Regulations that control speech based on its content are "presumptively invalid, and the Government bears the burden to rebut that presumption." *United States v. Stevens*, 559 U.S. 460, 468 (2010).

56.  Movies, commercials, entertainment, advertisements, educational programs, and promotion or endorsement of products are forms of speech protected by the First Amendment.

**Federal and California Speech Restrictions**

57.  50 C.F.R. § 21.29(f)(9)(i) prohibits Falconers from photographing or filming their birds for "movies, commercials, or in other commercial ventures"—if the images will be used in a production that is not about falcons or falconry.

58.  50 C.F.R. § 21.29(f)(9)(ii) prohibits Falconers from photographing or filming their birds for "advertisements; as a representation of any business, company, corporation, or other

organization; or for promotion or endorsement of any products, merchandise, goods, services, meetings, or fairs"—unless the promotion or endorsement is of "a nonprofit falconry organization or association" or "products or endeavors related to falconry."

59.   50 C.F.R. § 21.29(8)(v) imposes content-based restrictions about what Falconers can discuss in conservation education programs—including "information about the biology, ecological roles, and conservation needs of raptors and other migratory birds."

60.   50 C.F.R. § 21.29(f)(8)(iv) prohibits Falconers from being paid to speak in a conservation education program using their birds if they charge a fee for the presentation that exceeds the amount required to recoup their costs.

61.   14 C.C.R. § 670(h)(13)(A) prohibits Falconers from being paid to speak in any context using their birds if they charge a fee for the presentation that exceeds the amount required to recoup their costs.

**Legal Consequences of Non-Compliance**

62.   Failure to comply with the above requirements may result in the denial of a falconry license or in a previous license's immediate suspension. 14 C.C.R. § 670(j)(3)(A).

63.   A refusal to allow warrantless search may be inferred if, after "reasonable attempts" by the department, the licensee is unavailable. *Id.*

64.   Failure to follow the state and federal regulations also subjects Falconers to civil and criminal penalties. See 16 U.S.C. § 707; 14 C.C.R. § 747.

**FACTUAL ALLEGATIONS**

**Peter and Katherine Stavrianoudakis**

65.   Peter Stavrianoudakis has been interested in, housed, cared for, trained, and flown falcons and other birds of prey used in falconry since he was 16-years old.

66.   On or about 1980, when he was 20-years old, Peter secured his first falconry license and has held a valid falconry license for the majority of the last 38 years.

67.   Peter renewed his falconry license in June 2018, June 2019, and will renew his license again in June 2020.

68.   Peter has continuously complied with all requirements for falconry licensure.

69.     In approximately 1983, Peter was subject to an unreasonable warrantless search of his home and warrantless arrest by armed members of the California Department of Fish and Wildlife related to his lawful activities as a non-resident falconer in Nevada.

70.     No charges were filed against Peter related to this incident.

71.     Peter first became affiliated with American Falconry Conservancy in 2017.

72.     Shortly thereafter he became the Pacific Coast Director for American Falconry Conservancy for a two-year term expiring in 2019.

73.     Peter has never been sanctioned or cited by U.S. Fish and Wildlife, California Fish and Wildlife, or any other agency or body, related to his practice of falconry.

74.     In his time as a falconer, Peter has housed, cared for, trained, and flown approximately 15 birds.

75.     Currently, Peter owns one four-year-old aplomado falcon named "Ares."

76.     Peter has owned, housed, cared for, trained, and flown Ares for the last three years.

77.     Peter has a close personal bond and friendship with Ares that rivals that of any other human and pet.

78.     Peter does not generate any type of income, or participate in any kind of industry through his ownership, training, or care of Ares.

79.     Ares lives exclusively inside Peter's home, specifically inside his and Katherine's bedroom, and to ensure Ares' health, is occasionally weathered in a protected enclosure in on their fenced property approximately 20 feet from their home.

80.     There is no separate structure used for the care or housing of Ares.

81.     Peter and Katherine Stavrianoudakis were married in May 2014.

82.     Peter and Katherine's home was originally purchased by Peter's mother Darlene Stavrianoudakis in 1973.

83.     Peter and Katherine have lived there together for a total of five years.

84.     Katherine does not, and has never, held a falconry license or practiced falconry.

///

///

**Eric Ariyoshi**

85.　　Eric Ariyoshi has been interested in, housed, cared for, trained, and flown falcons and other birds of prey used in falconry since he was 13-years old.

86.　　In 1988, when he was 16-years old, Eric secured his first falconry license and has held a valid falconry license for approximately the last 30 years.

87.　　Eric renewed his falconry license in June 2018, June 2019, and will renew his license again in June 2020.

88.　　Eric has continuously complied with all requirements for falconry licensure.

89.　　In his time as a falconer, Eric has housed, cared for, trained, and flown approximately 20 birds.

90.　　Eric has never been sanctioned or cited by U.S. Fish and Wildlife, California Fish and Wildlife, or any other agency or body, related to his practice of falconry.

91.　　Eric currently owns one three-year-old male Peregrine Falcon named "Finn."

92.　　Finn is housed in an unrestricted mews located 30 feet away with a direct line of sight to the rear of Eric's home.

93.　　Eric first became aware of American Falconry Conservancy in 2016, shortly thereafter become the organization's Secretary.

94.　　Eric has given uncompensated educational presentations about falconry.

**Scott Timmons**

95.　　In 1988, when he was 20-years old, Scott secured his first falconry license and has held a valid falconry license for approximately 30 years.

96.　　Scott renewed his falconry license in June 2018, June 2019, and will renew his license again in June 2020.

97.　　Scott has continuously complied with all requirements for falconry licensure.

98.　　In his time as a falconer, Scott has housed, cared for, trained, and flown approximately 40 birds; 20 falconry birds and 20 birds used for abatement services.

99.　　Species that Scott has owned include red-tailed hawks, coopers hawks, peregrine falcons, and hybrid species.

100.   In 1992, Scott was approached on his mother's private property in Thousand Oaks, California, by officers of the California Fish & Game Department.

101.   Scott was living with his mother and attending college at the time.

102.   The officers claimed to be there to inquire as to whether he was still in possession of a certain red-tailed hawk.

103.   Scott told them that said hawk had flown away, and they soon revealed that they were already in possession of the hawk.

104.   Scott believes the officers used the hawk as pretext to attempt an unreasonable warrantless search of his mother's private property.

105.   Scott has never been sanctioned or cited by U.S. Fish and Wildlife, California Fish and Wildlife, or any other agency or body, related to his practice of falconry.

106.   Currently, Scott owns three birds: "June," is a five-year-old Goshawk, "Jeppa" is a five-year-old Peregrine Falcon, and "Tio" is a six-year-old Harris Hawk.

107.   Scott has a close personal bond and friendship with June, Jeppa, and Tio that rivals that of any other human and pet.

108.   Scott's falcons live exclusively in mews and other structures directly adjacent to his home.

109.   Scott first heard of and became acquainted with American Falconry Conservancy in 2014 and became a member in 2018.

110.   Scott is the owner of an abatement services company called Aerial Solutions.

111.   Abatement is the practice of flying certain species of raptor over a given area as a deterrent to the presence of other invasive bird species. Abatement is important in the prevention of nuisance caused by seagulls and other bird species at landfills and near airports.

112.   Scott has been asked to perform educational presentations, including conservation education presentations, at the same time that he is flying his birds for abatement. But he has declined to perform these demonstrations because of the regulations that prohibit compensation for speaking that exceeds the amount required to recoup his costs.

///

**American Falconry Conservancy**

113.    American Falconry Conservancy is a membership organization established in 2002 and composed of approximately 100 members from across the United States.

114.    American Falconry Conservancy's stated purpose is to promote "the broadest liberties possible that are not in conflict with legitimate conservation efforts based upon sound biological and legal reasoning," and "promote knowledge of quality falconry, as well as to instill pride in falconers for the cultural heritage of the sport, and its place in world history."

115.    American Falconry Conservancy is comprised of six districts across the United States, with each region overseen by a regional director.

116.    American Falconry Conservancy is managed by an executive board consisting of a president, vice-president, secretary, and treasurer, with membership decisions vested in a board of directors.

117.    American Falconry Conservancy membership is open to "[a]ny falconer—neither antagonistic nor detrimental to the association or its purpose—of good moral character and over the age of 17 years."

118.    American Falconry Conservancy members pay annual dues, starting at $30 for one year.

119.    By virtue of holding falconry licenses, all members of American Falconry Conservancy are subject to the federal warrantless search provisions challenged herein.

120.    By virtue of holding falconry licenses, all members of American Falconry Conservancy residing in California are subject to the California warrantless search provision challenged herein.

121.    By virtue of holding falconry licenses, all members of American Falconry Conservancy who live in California suffer the imposition of an unconstitutional condition by being forced to agree to allow unreasonable warrantless searches of their private homes, curtilage, and other protected property as a condition of receiving their falconry licenses.

122.    This cognizable injury occurs annually every time they renew their California falconry licenses.

123. By virtue of holding falconry licenses, all members of American Falconry Conservancy are subject to the federal speech restrictions challenged herein.

124. By virtue of holding falconry licenses, all members of American Falconry Conservancy residing in California are subject to the California speech restrictions challenged herein.

125. The vast majority of licensed falconers, including the members of American Falconry Conservancy, keep their birds housed either within their private homes, or within falconry weathering structures called mews located directly adjacent to their private homes within protected curtilage.

126. Housing falcons within private homes or on protected curtilage is the common practice among licensed falconers.

127. As a result of the challenged regulations, American Falconry Conservancy members' private homes, protected curtilage, and personal property are subject to unreasonable warrantless searches.

128. Warrantless searches of American Falconry Conservancy members' private homes and other property by Defendants is widespread and on-going.

129. Fred Seaman ("Seaman") is a currently licensed falconer in California and member of American Falconry Conservancy whose private home, curtilage, and other property was searched by armed California Fish and Wildlife agents without a warrant in 2016.

130. Seaman held a valid California falconry license and was a member of American Falconry Conservancy at the time this warrantless search occurred.

131. Seaman has been a member of American Falconry Conservancy continuously since 2009.

132. But for the condition placed on his falconry license, Seaman would not allow the warrantless search of his private home, curtilage, and other property by armed Fish and Wildlife agents.

///

///

133.   Leonardo Velazquez ("Velazquez") is a currently licensed falconer in California and member of the American Falconry Conservancy whose private home, curtilage, and other property was searched by armed California Fish and Wildlife agents without a warrant in 2017.

134.   Velazquez held a valid California falconry license and was a member of American Falconry Conservancy at the time this warrantless search occurred.

135.   Velazquez has been a member of American Falconry Conservancy continuously since 2016.

136.   But for the condition placed on his falconry license, Velazquez would not allow the warrantless search of his private home, curtilage, and other property by armed Fish and Wildlife agents.

137.   Lydia Ash ("Ash") is a member of the American Falconry Conservancy whose private home, curtilage, and other property was searched by armed federal Fish and Wildlife agents without a warrant in 2009.

138.   Ash held a valid Washington state falconry license at the time the warrantless search occurred.

139.   But for the condition placed on her previous falconry license, Ash would not allow the warrantless search of her private home, curtilage, and other property by armed Fish and Wildlife agents.

140.   Stephen Layman ("Layman") is a currently licensed falconer in Washington state and member of the American Falconry Conservancy whose private home, curtilage, and other property was searched by armed federal Fish and Wildlife agents without a warrant in 2004.

141.   Layman held a valid Washington state falconry license at the time this warrantless search occurred.

142.   But for the condition placed on his falconry license, Layman would not allow the warrantless search of his private home, curtilage, and other property by armed Fish and Wildlife agents.

///

///

1    143.   Due to the unconstitutional condition placed on their licenses, and the unreasonable

2    warrantless searches routinely carried out by both armed federal and state Fish and Wildlife officers,

3    members of American Falconry Conservancy experience daily fear and anxiety.

4    144.   American Falconry Conservancy members are subject to the speech prohibiting

5    regulations complained of in this action.

6    145.   Certain members of American Falconry Conservancy have declined to create

7    photographs, movies, commercials, and other expression due to Defendants' active enforcement of

8    the regulations complained of in this action.

9    146.   Certain members of American Falconry Conservancy have modified the content of

10   their educational presentations due to Defendants' active enforcement of the regulations

11   complained of in this action.

12   147.   Certain members of American Falconry Conservancy have declined to perform

13   educational presentations and engage in other expression due to Defendants' active enforcement of

14   the regulations limiting compensation complained of in this action.

15   148.   American Falconry Conservancy as an association is dedicated to protecting and

16   preserving the practice of falconry and protecting falconers' rights.

17   149.   Neither the claims asserted here, nor the specific relief requested, require the

18   participation of individual members of American Falconry Conservancy.

19                                    **CLAIMS FOR RELIEF**
                                          **Count I**
20   **(50 C.F.R. § 21.29(b)(4)(i), 50 C.F.R. § 21.29(d)(2) and (d)(9), and 14 C.C.R. § 670(j)(3)(A))**
                        **(Unconstitutional Condition on Falconry Licenses)**
21                        **(Fourth and Fourteenth Amendments)**

22   150.   Falconers incorporate the allegations in the preceding paragraphs.

23   151.   Under 50 C.F.R. § 21.29(b)(4)(i), Defendants assert the purported authority to search

24   Falconers' facilities without a warrant "to ensure that the facilities standards" in § 21.29 are met.

25   152.   50 C.F.R. § 21.29(d)(2) and (d)(9) grant state officials the power to conduct

26   warrantless searches of the "equipment and records" of Falconers.

27   ///

28   ///

153.    14 C.C.R. § 670(j)(3)(A), authorizes warrantless searches of falconry "facilities, equipment, or raptors possessed" by licensee Falconers, including the power to "inspect, audit, or copy any permit, license, book[.]" or other required record.

154.    Falconers' falconry "facilities" are located within private homes or structures within the curtilage of private homes, as are the targeted "equipment and records."

155.    Falconers' birds, falconry equipment, and records are also "papers and effects" protected by the Fourth Amendment.

156.    As a condition of securing and maintaining their falconry licenses, Falconers are forced, in violation of the unconstitutional conditions doctrine, to waive their Fourth Amendment rights to be free from unreasonable warrantless searches of their private homes, protected curtilage, and protected effects.

157.    Falconry license holders are required to renew their licenses annually, and as a consequence are forced to annually consent to unconstitutional searches of their private homes and property as a condition of licensure, thereby suffering ongoing and continuing constitutional injury.

158.    Both facially and as-applied, the warrantless search conditions imposed by both the federal and California search regulations challenged herein violate Falconers' Fourth Amendment rights.

159.    Falconers' are suffering a continuing injury in fact that exists as an immediate controversy between the parties due to the annual licensure requirement that Falconers waive their Fourth Amendment rights against unreasonable searches.

160.    Falconers have no adequate remedy at law to compensate for the loss of these fundamental freedoms and will suffer irreparable injury absent an injunction restraining Defendants' enforcement of the regulations complained of in this action. Falconers are therefore entitled to declaratory and permanent injunctive relief against continued enforcement and maintenance of Defendants' unconstitutional laws, practices, and policies. *See* 28 U.S.C. §§ 2201, 2202.

///

///

///

**Count II**
**(50 C.F.R. § 21.29(b)(4)(i), 50 C.F.R. § 21.29(d)(2) and (d)(9), and 14 C.C.R. § 670(j)(3)(A))**
**(Authorization and Practice of Unconstitutional Warrantless**
**Searches of Property of Falconry License Holders)**

161.   Falconers incorporate the allegations in the preceding paragraphs.

162.   Under 50 C.F.R. § 21.29(b)(4)(i), Defendants assert the purported authority to search Falconers' facilities without a warrant "to ensure that the facilities standards" in § 21.29 are met.

163.   50 C.F.R. § 21.29(d)(2) and (d)(9) grant state officials the power to conduct warrantless searches of the "equipment and records" of Falconers.

164.   14 C.C.R. § 670(j)(3)(A), authorizes warrantless searches of falconry "facilities, equipment, or raptors possessed" by licensee Falconers, including the power to "inspect, audit, or copy any permit, license, book, or other record required [.]"

165.   The vast majority of licensed falconers, including the Falconers in this case, keep their birds housed either within their private homes, or within falconry weathering structures called mews located directly adjacent to their private homes within protected curtilage.

166.   Housing falcons within private homes or on protected curtilage is the common practice among licensed falconers.

167.   Falconers' falconry "facilities" are located within private homes or structures within the curtilage of private homes, as are the targeted "equipment and records."

168.   Falconers' birds, falconry equipment, and records are also "papers and effects" protected by the Fourth Amendment.

169.   Unreasonable warrantless searches of Falconers' private homes and curtilage by Defendants is widespread and on-going.

170.   Falconers challenge the claimed authority of Defendants to conduct unreasonable warrantless searches of Falconers' private homes, protected curtilage, and other property.

171.   Both facially and as-applied, Defendants' claimed authority to conduct unreasonable warrantless searches of Falconers' homes and curtilage violate their Fourth Amendment rights.

///

///

172.    Upon information and belief, Falconers allege that without the authority provided in the challenged search regulations, Defendants would not conduct warrantless searches of Falconers' private homes, protected curtilage, and protected papers and effects.

173.    Falconers challenge the actual practice of Defendants conducting unreasonable warrantless searches of Falconers' private homes, protected curtilage, and protected papers and effects.

174.    Defendants' actions demonstrate a pattern or practice of unreasonable warrantless searches pursuant to their claimed authority. *See Melendres v. Arpaio*, 695 F.3d 990, 998–99 (9th Cir. 2012).

175.    This pattern or practice creates a sufficient likelihood of individualized injury to sustain Falconers' claims for equitable relief under the Fourth Amendment. *Id.*

176.    Day-to-day, Falconers live in ongoing fear of their private homes, protected curtilage, and protected papers and effects being subject to unreasonable warrantless search by armed Fish and Wildlife agents.

177.    Both facially and as-applied, Falconers' are suffering a continuing injury in fact that exists as an immediate controversy between the parties due to the ongoing threat of unreasonable warrantless searches.

178.    Falconers have no adequate remedy at law to compensate for the loss of these fundamental freedoms and will suffer irreparable injury absent an injunction restraining Defendants' enforcement of the regulations complained of in this action. Falconers are therefore entitled to declaratory and permanent injunctive relief against continued enforcement and maintenance of Defendants' unconstitutional laws, practices, and policies. *See* 28 U.S.C. §§ 2201, 2202.

**Count III**
**(Warrantless Search of Non-Falconry License Holders)**
**(Fourth and Fourteenth Amendments)**

179.    Katherine Stavrianoudakis incorporates the allegations in the preceding paragraphs.

180.    Under 50 C.F.R. § 21.29(b)(4)(i), Defendants assert the purported authority to conduct warrantless searches of Katherine's private home and protected curtilage without a warrant "to ensure that the facilities standards" in § 21.29 are met.

181.    50 C.F.R. § 21.29(d)(2) and (d)(9) grant state officials the power to conduct warrantless searches of the "equipment and records" located within Katherine's private home and protected curtilage.

182.    14 C.C.R. § 670(j)(3)(A), authorizes warrantless searches of falconry "facilities, equipment, or raptors possessed" by licensees like Katherine's husband Peter, including the power to "inspect, audit, or copy any permit, license, book[.]" or other required record.

183.    Katherine does not, and has never, held a falconry license or practiced falconry; yet her private home and curtilage is still subject to unreasonable warrantless searches.

184.    Katherine has not, and does not, consent to unreasonable warrantless searches of her home and curtilage.

185.    Peter Stavrianoudakis's falconry "facility" is located within Katherine's private home, as are the targeted "equipment and records."

186.    Peter's falcon "Ares" is specifically housed the majority of the time within Katherine's bedroom.

187.    Day-to-day Katherine lives in ongoing fear of her home and curtilage being subject to unreasonable warrantless search by armed government agents.

188.    The federal and California search provisions challenged herein violate Katherine's Fourth Amendment rights.

189.    Both facially and as-applied, Katherine and similarly situated non-falconers are suffering a continuing injury in fact that exists as an immediate controversy between the parties.

190.    Katherine has no adequate remedy at law to compensate for the loss of these fundamental freedoms and will suffer irreparable injury absent an injunction restraining Defendants' enforcement of the regulations complained of in this action. Katherine is therefore entitled to declaratory and permanent injunctive relief against continued enforcement and maintenance of Defendants' unconstitutional laws, practices, and policies. *See* 28 U.S.C. §§ 2201, 2202.

///

///

///

1
2
3

**Count IV**
**(50 C.F.R. § 21.29(f)(9)(i))**
**(Free Speech)**
**(First and Fourteenth Amendments)**

4      191.    Plaintiffs Peter Stavrianoudakis, Scott Timmons, and American Falconry

5   Conservancy incorporate the allegations in the preceding paragraphs.

6      192.    The First Amendment to the United States Constitution, as applied to the states

7   through the Fourteenth Amendment, protects the truthful, non-misleading speech that Plaintiffs

8   would engage in but for the regulations complained of in this action.

9      193.    On its face and as enforced by Defendants, 50 C.F.R. § 21.29(f)(9)(i) prohibits

10   Plaintiffs from photographing or filming their birds for "movies, commercials, or in other

11   commercial ventures"—but only if the images will be used in a production that is not about falcons

12   or falconry.

13      194.    On its face and as enforced by Defendants, 50 C.F.R. § 21.29(f)(9)(i) prohibits

14   Plaintiffs from engaging in lawful communication using their birds.

15      195.    On its face and as enforced by Defendants, 50 C.F.R. § 21.29(f)(9)(i) burdens speech

16   protected by the First Amendment.

17      196.    On its face and as enforced by Defendants, 50 C.F.R. § 21.29(f)(9)(i) is based on the

18   content of the regulated speech.

19      197.    On its face and as enforced by Defendants, 50 C.F.R. § 21.29(f)(9)(i) is not tailored

20   to serve a substantial or compelling government interest.

21      198.    On its face and as enforced by Defendants, 50 C.F.R. § 21.29(f)(9)(i) is an

22   unconstitutional condition imposed on falconry permits, in violation of the First Amendment.

23      199.    But for Defendants' active enforcement of 50 C.F.R. § 21.29(f)(9)(i), Plaintiffs

24   would photograph or film their birds for "movies, commercials, or in other commercial ventures"

25   unrelated to falcons or falconry.

26      200.    By prohibiting Plaintiffs from photographing or filming their birds for "movies,

27   commercials, or in other commercial ventures" unrelated to falcons or falconry, Defendants

28   currently maintain and actively enforce a set of laws, practices, policies, and procedures under color

of state and federal law that deprive Plaintiffs and American Falconry Conservancy members of their rights to freedom of speech, in violation of the First and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.

201.    Plaintiffs have no adequate remedy at law to compensate for the loss of these fundamental freedoms and will suffer irreparable injury absent an injunction restraining Defendants' enforcement of the regulations complained of in this action. Plaintiffs are therefore entitled to declaratory and permanent injunctive relief against continued enforcement and maintenance of Defendants' unconstitutional laws, practices, and policies. *See* 28 U.S.C. §§ 2201, 2202.

**Count V**
**(50 C.F.R. § 21.29(f)(9)(ii))**
**(Commercial Speech)**
**(First and Fourteenth Amendments)**

202.    Plaintiffs Peter Stavrianoudakis, Scott Timmons, and American Falconry Conservancy incorporate the allegations in the preceding paragraphs.

203.    The First Amendment to the United States Constitution, as applied to the states through the Fourteenth Amendment, protects the truthful, non-misleading speech that Plaintiffs would engage in but for the regulations complained of in this action.

204.    On its face and as enforced by Defendants, 50 C.F.R. § 21.29(f)(9)(ii) prohibits Plaintiffs from photographing or filming their birds for "advertisements; as a representation of any business, company, corporation, or other organization; or for promotion or endorsement of any products, merchandise, goods, services, meetings, or fairs"—unless the promotion or endorsement is of "a nonprofit falconry organization or association" or "products or endeavors related to falconry."

205.    On its face and as enforced by Defendants, 50 C.F.R. § 21.29(f)(9)(ii) prohibits Plaintiffs from engaging in lawful communication using their birds.

206.    On its face and as enforced by Defendants, 50 C.F.R. § 21.29(f)(9)(ii) burdens speech protected by the First Amendment.

207.    On its face and as enforced by Defendants, 50 C.F.R. § 21.29(f)(9)(ii) is based on the content of the regulated speech.

208.     On its face and as enforced by Defendants, 50 C.F.R. § 21.29(f)(9)(ii) is not tailored to serve a substantial or compelling government interest.

209.     On its face and as enforced by Defendants, 50 C.F.R. § 21.29(f)(9)(ii) is an unconstitutional condition imposed on falconry permits, in violation of the First Amendment.

210.     But for Defendants' active enforcement of 50 C.F.R. § 21.29(f)(9)(ii), Plaintiffs would photograph or film their birds for "advertisements; as a representation of any business, company, corporation, or other organization; or for promotion or endorsement of any products, merchandise, goods, services, meetings, or fairs" unrelated to falconry.

211.     By prohibiting Plaintiffs from photographing or filming their birds for "advertisements; as a representation of any business, company, corporation, or other organization; or for promotion or endorsement of any products, merchandise, goods, services, meetings, or fairs" unrelated to falconry, Defendants currently maintain and actively enforce a set of laws, practices, policies, and procedures under color of state and federal law that deprive Plaintiffs and American Falconry Conservancy members of their rights to freedom of speech, in violation of the First and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.

212.     Plaintiffs have no adequate remedy at law to compensate for the loss of these fundamental freedoms and will suffer irreparable injury absent an injunction restraining Defendants' enforcement of the regulations complained of in this action. Plaintiffs are therefore entitled to declaratory and permanent injunctive relief against continued enforcement and maintenance of Defendants' unconstitutional laws, practices, and policies. *See* 28 U.S.C. §§ 2201, 2202.

**Count VI**
**(50 C.F.R. § 21.29(f)(8)(v))**
**(Compelled Content of Conservation Education Programs)**
**(First and Fourteenth Amendments)**

213.     Plaintiffs Peter Stavrianoudakis, Scott Timmons, and American Falconry Conservancy incorporate the allegations in the preceding paragraphs.

214.     The First Amendment to the United States Constitution, as applied to the states through the Fourteenth Amendment, protects the truthful, non-misleading speech that Plaintiffs would engage in but for the regulations complained of in this action.

215.     On its face and as enforced by Defendants, 50 C.F.R. § 21.29(f)(8)(v) imposes content-based restrictions about what Plaintiffs can discuss in conservation education programs—including requiring discussion of "information about the biology, ecological roles, and conservation needs of raptors and other migratory birds."

216.     On its face and as enforced by Defendants, 50 C.F.R. § 21.29(f)(8)(v) prohibits Plaintiffs from engaging in lawful communication using their birds.

217.     On its face and as enforced by Defendants, 50 C.F.R. § 21.29(f)(8)(v) compels Plaintiffs to communicate particular messages when conducting conservation education programs.

218.     On its face and as enforced by Defendants, 50 C.F.R. § 21.29(f)(8)(v) burdens speech protected by the First Amendment.

219.     On its face and as enforced by Defendants, 50 C.F.R. § 21.29(f)(8)(v) is based on the content of the regulated speech.

220.     On its face and as enforced by Defendants, 50 C.F.R. § 21.29(f)(8)(v) is not tailored to serve a substantial or compelling government interest.

221.     On its face and as enforced by Defendants, 50 C.F.R. § 21.29(f)(8)(v) is an unconstitutional condition imposed on falconry permits, in violation of the First Amendment.

222.     But for Defendants' active enforcement of 50 C.F.R. § 21.29(f)(8)(v), Plaintiffs would determine the content of conservation education programs that they perform.

223.     By prohibiting Plaintiffs from determining the content of conservation education programs that they perform, Defendants currently maintain and actively enforce a set of laws, practices, policies, and procedures under color of state and federal law that deprive Plaintiffs and American Falconry Conservancy members of their rights to freedom of speech, in violation of the First and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.

224.     Plaintiffs have no adequate remedy at law to compensate for the loss of these fundamental freedoms and will suffer irreparable injury absent an injunction restraining Defendants' enforcement of the regulations complained of in this action. Plaintiffs are therefore entitled to declaratory and permanent injunctive relief against continued enforcement and maintenance of Defendants' unconstitutional laws, practices, and policies. *See* 28 U.S.C. §§ 2201, 2202.

**Count VII**
**(50 C.F.R. § 21.29(f)(8)(iv))**
**(Payment for Conservation Education Programs)**
**(First and Fourteenth Amendments)**

225.     Plaintiffs Peter Stavrianoudakis, Scott Timmons, and American Falconry Conservancy incorporate the allegations in the preceding paragraphs.

226.     The First Amendment to the United States Constitution, as applied to the States through the Fourteenth Amendment, protects the truthful, non-misleading speech that Plaintiffs would engage in but for the regulations complained of in this action.

227.     On its face and as enforced by Defendants, 50 C.F.R. § 21.29(f)(8)(iv) prohibits Plaintiffs from being paid to speak in a conservation education program using their birds if they charge a fee for the presentation that exceeds the amount required to recoup their costs.

228.     On its face and as enforced by Defendants, 50 C.F.R. § 21.29(f)(8)(iv) imposes a disincentive to engage in conservation education programs by limiting compensation.

229.     On its face and as enforced by Defendants, 50 C.F.R. § 21.29(f)(8)(iv) burdens speech protected by the First Amendment.

230.     On its face and as enforced by Defendants, 50 C.F.R. § 21.29(f)(8)(iv) is based on the content of the regulated speech.

231.     On its face and as enforced by Defendants, 50 C.F.R. § 21.29(f)(8)(iv) is not tailored to serve a substantial or compelling government interest.

232.     On its face and as enforced by Defendants, 50 C.F.R. § 21.29(f)(8)(iv) is an unconstitutional condition imposed on falconry permits, in violation of the First Amendment.

233.     But for Defendants' active enforcement of 50 C.F.R. § 21.29(f)(8)(iv), Plaintiffs would accept compensation for conservation education programs that exceeds the amount required to recoup their costs.

234.     By prohibiting Plaintiffs from receiving compensation for conservation education programs that exceeds the amount required to recoup their costs, Defendants currently maintain and actively enforce a set of laws, practices, policies, and procedures under color of state and federal law that deprive Plaintiffs and American Falconry Conservancy members of their rights to freedom

1  of speech, in violation of the First and Fourteenth Amendments to the United States Constitution

2  and 42 U.S.C. § 1983.

3       235.     Plaintiffs have no adequate remedy at law to compensate for the loss of these

4  fundamental freedoms and will suffer irreparable injury absent an injunction restraining

5  Defendants' enforcement of the regulations complained of in this action. Plaintiffs are therefore

6  entitled to declaratory and permanent injunctive relief against continued enforcement and

7  maintenance of Defendants' unconstitutional laws, practices, and policies. *See* 28 U.S.C. §§ 2201, 2202.

8                                      **Count VIII**
                                **(14 C.C.R. § 670(h)(13)(A))**
9                                       **(Free Speech)**
                          **(First and Fourteenth Amendments)**
10

11      236.     Plaintiffs Peter Stavrianoudakis, Scott Timmons, and American Falconry

12  Conservancy incorporate the allegations in the preceding paragraphs.

13      237.     On its face and as enforced by Defendants, 14 C.C.R. § 670(h)(13)(A) incorporates

14  the speech restrictions contained in 50 C.F.R. § 21.29 and is unconstitutional for the same reasons.

15      238.     On its face and as enforced by Defendants, 14 C.C.R. § 670(h)(13)(A) prohibits

16  Falconers from being paid to speak in any context using their birds if they charge a fee for the

17  presentation that exceeds the amount required to recoup their costs. It is unconstitutional for the

18  same reasons as 50 C.F.R. § 21.29(f)(8)(iv).

19      239.     But for Defendants' active enforcement of 14 C.C.R. § 670(h)(13)(A), Plaintiffs

20  would accept compensation for speaking using their birds that exceeds the amount required to

21  recoup their costs.

22      240.     By prohibiting Plaintiffs from speaking using their birds and by prohibiting

23  Plaintiffs from accepting compensation for that speech that exceeds the amount required to recoup

24  their costs, Defendants currently maintain and actively enforce a set of laws, practices, policies, and

25  procedures under color of state and federal law that deprive Plaintiffs and American Falconry

26  Conservancy members of their rights to freedom of speech, in violation of the First and Fourteenth

27  Amendments to the United States Constitution and 42 U.S.C. § 1983.

28  ///

241.     Plaintiffs have no adequate remedy at law to compensate for the loss of these fundamental freedoms and will suffer irreparable injury absent an injunction restraining Defendants' enforcement of the regulations complained of in this action. Plaintiffs are therefore entitled to declaratory and permanent injunctive relief against continued enforcement and maintenance of Defendants' unconstitutional laws, practices, and policies. *See* 28 U.S.C. §§ 2201, 2202.

**Count IX**
**(5 U.S.C. § 706)**
**(Regulations In Excess of Statutory Jurisdiction, Authority, or Limitations)**

242.     Falconers and Katherine incorporate the allegations in the preceding paragraphs.

243.     The regulations challenged herein were promulgated pursuant to the Migratory Bird Treaty Act, 16 U.S.C. § 703, *et seq.*, and the Bald and Golden Eagle Protection Act, 16 U.S.C. § 668, *et seq.*

244.     The Migratory Bird Treaty Act grants Defendants the "authority, with a search warrant, to search any place" and by plain implication denies the authority to conduct searches without a warrant. 16 U.S.C. § 706.

245.     Neither the Migratory Bird Treaty Act nor the Bald and Golden Eagle Protection Act grant Defendants the authority to regulate falconers' speech.

246.     The regulations challenged herein are in excess of statutory jurisdiction, authority, or limitations in violation of 5 U.S.C. § 706(2)(C).

247.     Falconers and Katherine have no adequate remedy at law and will suffer irreparable injury absent an injunction restraining Defendants' enforcement of the regulations complained of in this action. Falconers and Katherine are therefore entitled to declaratory and permanent injunctive relief against continued enforcement and maintenance of Defendants' illegal laws, practices, and policies. *See* 28 U.S.C. §§ 2201, 2202.

1

**PRAYER FOR RELIEF**

2          Wherefore, Plaintiffs respectfully request that this Court enter judgment in their favor as

3    follows:

4          A.      Declare that regulations challenged herein violate Plaintiffs' rights to be free from

5    unreasonable searches protected by the Fourth and Fourteenth Amendments on their face and as

6    applied;

7          B.      Declare that regulations challenged herein violate Plaintiffs Peter Stavrianoudakis,

8    Scott Timmons, and American Falconry Conservancy's rights to freedom of speech protected by

9    the First and Fourteenth Amendments on their face and as applied;

10         C.      Preliminarily and permanently enjoin Defendants, their officers, agents, servants,

11   employees, and all persons in active concert or participation with them from enforcing the

12   regulations complained of in this action;

13         D.      Award Plaintiffs their costs, attorneys' fees, and other expenses in accordance with

14   law, including 42 U.S.C. § 1988; and

15         E.      Order such additional relief as may be just and proper.

16         DATED: February 24, 2020.

17                                         Respectfully submitted,

18                                         ANTHONY L. FRANÇOIS
                                           TIMOTHY R. SNOWBALL
19                                         JAMES M. MANLEY

20

21                                         By:  s/ Timothy R. Snowball
                                                TIMOTHY R. SNOWBALL

22                                         Attorneys for Plaintiffs

23

24

25

26

27

28