McGREGOR W. SCOTT
United States Attorney
PHILIP A. SCARBOROUGH (SBN 254934)
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile: (916) 554-2900
Philip.Scarborough@usdoj.gov

Attorneys for the U.S. Fish & Wildlife Service and Aurelia Skipwith

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PETER STAVRIANOUDAKIS, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES FISH AND WILDLIFE SERVICE, et al.,<br><br>Defendants. | CASE NO. 1:18-CV-01505-NONE-BAM<br><br>FEDERAL DEFENDANTS' SUPPLEMENTAL BRIEF OPPOSING MOTION FOR PRELIMINARY INJUNCTION ISSUES<br><br>JUDGE: Hon. Dale A. Drozd |

Defendants the United States Fish and Wildlife Service and Aurelia Skipwith, sued in her official capacity as the Director of the U.S. Fish and Wildlife Service ("USFWS") (collectively, the "Federal Defendants"), respectfully submit this supplemental brief opposing plaintiffs' first motion for preliminary injunction (ECF 17).

**BACKGROUND**

Simultaneous with this supplemental brief, the Federal Defendants have filed a motion to dismiss plaintiffs Second Amended Complaint ("SAC") (ECF 64). That motion contains detailed background concerning the statutes and regulations at issue. To avoid repetition, the Federal Defendants do not repeat that information here.

On January 24, 2020, the Court issued an order granting in part the Federal Defendants' motion to dismiss with leave to amend and denying it in part. *See* ECF 59. Plaintiffs thereafter filed the SAC, which is now the governing complaint. *See* ECF 64. In the January 24 order, the Court also denied the

plaintiffs' first motion for a preliminary injunction in part and requested supplemental briefing on certain issues relating to plaintiffs' First Amendment claims. *See* ECF 59.[1] Specifically, the Court requested the Federal Defendants file a supplemental brief addressing why two categories of restrictions in the federal falconry regulations (restrictions on falconers' ability to give presentations and to film and photograph protected raptors, and compensation restrictions) meet strict scrutiny, and why a third category (restrictions on commercial speech) are not more extensive than necessary to serve an important state interest. *See* ECF 59 at 51-53. The Court also requested the Federal Defendants to address the balance of equities and the public interest with respect to the requested injunction in more detail. *See id.* at 53.

## ARGUMENT

### A. Plaintiffs Are Not Likely to Succeed on the Merits of Their First Amendment Claims.

#### 1. Plaintiffs Failed to Allege an Article III Case or Controversy Against the Federal Defendants.

The Federal Defendants' primary argument is that the plaintiffs lack standing to proceed on their constitutional claims against the Federal Defendants and that any such claims are not ripe. As explained in the declaration of Brian Millsap, USFWS has delegated all falconry licensing authority to the respective states. *See* Decl. of Brian Millsap ("Millsap Decl.") (ECF 68-2) ¶¶ 8-9. Given the current regulatory structure, there is no relief this Court could issue that would alter the relationship between the plaintiffs and the Federal Defendants: Any injunction this Court might issue against the Federal Defendants would have no effect on USFWS' falconry licensing operations because it does not conduct any such operations. *See id.* ¶ 16; *see also* Decl. of Daniel Crum (ECF 27-1) ("Crum Decl.") ¶¶ 4-5 ("USFWS does not conduct any licensing enforcement with respect to 50 C.F.R. § 21.29(f)(8) and (9)."). Although there is a hypothetical possibility that the regulatory authority could be returned to USFWS at some point in the future, there are no facts suggesting that outcome is ever likely to occur.

---

[1] On March 23, 2020, plaintiffs filed a second motion for preliminary injunction directed toward their Fourth Amendment claims. *See* ECF 65. The Federal Defendants therefore limit this supplemental brief to issues related to plaintiffs' request for a preliminary injunction under the First Amendment, and will address the Fourth Amendment issues in accordance with the briefing schedule triggered by the March 23 motion.

Plaintiffs' claims against the Federal Defendants are the very definition of unripe. Moreover, to the extent plaintiffs are suffering from any injury at all, the Federal Defendants are not the cause of that injury. Nor would any relief directed at the Federal Defendants address it. This Court lacks jurisdiction to proceed in the absence of a true case or controversy between the Federal Defendants and the plaintiffs. The request for a preliminary injunction therefore must be denied.

### 2. The Commercial Restrictions Satisfy *Central Hudson*.

Plaintiffs challenge certain federal regulations that regulate commercial speech using native raptor species protected under the MBTA. *See* 50 C.F.R. § 21.29(f)(9)(i) and (ii).[2] The Supreme Court has established a four-part test to evaluate restrictions on commercial speech. *See Central Hudson Gas & Electric Corp. v. Public Service Commission of New York*, 447 U.S. 557 (1980). Each step is discussed below as it relates to the commercial restrictions challenged in this case.

First, the Court must determine whether the regulated expression is protected by the First Amendment. *Id.* at 566. Although much of the activity covered by § 21.29(f)(9)(i) and (ii), such as commercials and advertisements, falls within the traditional realm of commercial speech, at least some of the regulated activity – such as "commercial ventures that are not related to falconry" and "commercial entertainment" – is not necessarily entitled to First Amendment protection. The record shows that some of the activities plaintiffs seek to undertake, in fact, are not speech. For example, plaintiff Timmons has submitted a declaration indicating that he would like "to take paying clients out with [him] on falconry hunting expeditions with [his] birds." ECF 17-4 ¶ 24. But there is nothing inherently expressive about falconry hunting expeditions, and paying a guide to lead a falconry hunting expedition does not convey a particularized message. Such activities, even if they might involve associated protected speech, therefore are not protected by the First Amendment. *See Lamle v. City of Santa Monica*, 2010 WL 3734868, at *10 (C.D. Cal. July 23, 2010) (sale of goods was not entitled to

---

[2] Specifically, 50 C.F.R. § 21.29(f)(9)(i) prohibits using falconry raptors to make "commercials" or "in other commercial ventures that are not related to falconry." "Commercials" qualify as commercial speech, and the phrase "other commercial ventures" may cover some activity that is commercial speech. 50 C.F.R. § 21.29(f)(9)(ii) prohibits using falconry raptors "for advertisements; as a representation of any business, company, corporation, or other organization; or for promotion or endorsement of any products, merchandise, goods, services, meetings, or fairs." These restrictions apply only to commercial speech. That section also prohibits using licensed raptors in "commercial entertainment," which may cover some activity that is commercial speech.

First Amendment protection where the goods "do not bear a message, and their sale does not convey a particularized message" (citing cases)). To the extent the regulations encompass some non-speech activity in addition to commercial speech, those portions of the regulations do not implicate the First Amendment.

Second, the Court must "ask whether the asserted governmental interest is substantial." *Central Hudson*, 447 U.S. at 566. The purpose of the federal falconry regulations is to conserve wild native raptor populations, consistent with the United States' treaty obligations and implementing legislation, including by regulating commercialization of native raptors. As explained in the Millsap Declaration, in addition to their innate value as unique species, native raptors fill important ecological roles as apex predators. *See* Millsap Decl. (ECF 68-2) ¶¶ 4, 18. They also serve important roles in controlling pests, and thereby have beneficial effects on agriculture and ecosystems. *Id.* These ecological, agricultural, and conservation interests are substantial, as numerous courts have previously recognized. *See, e.g.*, *Missouri v. Holland*, 252 U.S. 416, 435 (1920) (describing the interest in protecting species under the MBTA as "of very nearly the first magnitude"); *United States v. Vasquez-Ramos*, 531 F.3d 987, 991 (9th Cir. 2008) (finding compelling government interest in preserving eagles under the MBTA for purposes of the Religious Freedom Restoration Act).

Third, the Court "must determine whether the regulation directly advances the government interest asserted." *Central Hudson*, 447 U.S. at 566. The primary purpose of the migratory bird treaties is to conserve native bird populations, including raptors, by limiting their commercial exploitation. *See* 16 U.S.C. § 703(a) (prohibiting any person without authorization from, *inter alia*, purchasing, bartering, or selling a migratory bird); Millsap Decl. (ECF 68-2) ¶¶ 4-5. The commercial regulations challenged by plaintiffs directly advance that interest by limiting the demand for taking wild raptors to use in commercial endeavors. *Id.* ¶ 11. Allowing commercial use of native falconry raptors would increase take of those raptors in two ways. First, additional raptors would be taken pursuant to valid permits. *See id.* ¶¶ 11, 17. And second, the availability of commercial opportunities for raptor use would increase unlicensed take by individuals without permits. *See id.* The challenged regulations directly prevent those sources of pressure on wild raptor populations from developing. *See id.*

Fourth, the Court must ask whether the challenged regulations are "drawn to achieve [the government's] interest." *Sorrell v. IMS Health, Inc.*, 564 U.S. 552, 572 (2011). For commercial speech restrictions, this step requires "a fit between the legislature's ends and the means chosen to accomplish those ends," even if it "is not necessarily perfect" but is "reasonable." *Bd. of Trs. of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 480 (1989). It does not require "the least restrictive means." *See id.*; *see also Retail Digital Network, LLC v. Prieto*, 861 F.3d 839, 848 n.10 (9th Cir. 2017) (en banc).

The commercial regulations challenged here are reasonably drawn to achieve the conservation and treaty interests that the government advances. The regulations prohibit commercial speech using protected raptors but provide a limited carve-out for commercial speech related to falconry or non-profit falconry associations. As explained in the Millsap Declaration, falconry itself provides conservation benefits by maintaining a captive reserve that can be used to replenish wild populations in the event of a decline in the wild. *See* Millsap Decl. (ECF 68-2) ¶ 13. Prohibiting commercial speech unrelated to falconry while allowing limited commercial speech for falconry purposes is tailored to balance the conservation aims of the government while recognizing the important role that falconry itself plays in conservation.

The regulations also provide a limited exception to the prohibition on commercial use of raptors that allows falconers to use raptors in certain circumstances to propagate captive-bred raptors and sell them to other licensed falconers. *See* Millsap Decl. (ECF 68-2) ¶ 14. This exception is likewise designed to reduce pressure on wild native raptor populations by providing a supply source that can assist in filling the demand for falconry raptors without taking additional raptors from the wild. *See id.*

Finally, the challenged regulations are tailored to the asserted government interest because they apply only to *native* raptor species listed in the treaties underlying the MBTA. In that way, they are directed solely to the government's interests in protecting native raptors and meeting its underlying treaty obligations. Plaintiffs can engage in commercial speech using any number of widely available non-native raptor species. *See* Millsap Decl. (ECF 68-2) ¶ 15.

Nor does the fact that the regulations encompass some non-speech activities, such as "commercial endeavors" or "commercial entertainment," make them overinclusive. The overinclusiveness inquiry asks whether the challenged law "restrict[s] *more speech* than necessary to

serve" the asserted government interest. *Valle Del Sol Inc. v. Whiting*, 709 F.3d 808, 826 (9th Cir. 2013) (emphasis added). Non-speech activities that are not entitled to First Amendment protection at all do not cause overinclusiveness problems.

Because the challenged commercial regulations satisfy the *Central Hudson* test, the Court should deny plaintiffs' requested injunction with respect to those regulations.

### 3. The United States' Position with Respect to Strict Scrutiny.

As set forth in the motion to dismiss, plaintiffs lack standing to pursue any of their First Amendment claims against the Federal Defendants, and those claims also are not ripe. At the present time, the Federal Defendants have no role in issuing or enforcing the terms of falconry licenses in the relevant states. *See* Millsap Decl. (ECF 68-2) ¶¶ 8-9, 16; Crum Decl. (ECF 27-1) ¶¶ 4-5. This defect in plaintiffs' claims is made clear because any preliminary injunction this Court might issue would have no effect on the day-to-day operations of the Federal Defendants; the Federal Defendants already do not issue or enforce the terms of plaintiffs' falconry permits. *See* Millsap Decl. (ECF 68-2) ¶ 16. Any decision adjudicating these issues would be a solely advisory opinion. This Court therefore lacks jurisdiction over the constitutional claims against the Federal Defendants.

Should the Court reach the merits of plaintiffs First Amendment claims, the Department of Justice does not take the position that the challenged regulations satisfy strict scrutiny insofar as they apply to non-commercial speech.

### B. The Balance of Equities and the Public Interest Require Denying the Request for a Preliminary Injunction.

When the government is a party to an injunctive action, analysis of the public interest and balance of equities factors merges. *See Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014). Here, these factors require denying the requested preliminary relief.

If the preliminary injunction is granted, the effect on wild native raptor populations will be difficult to predict, but would be greater than under the current regulatory paradigm. As explained in the Millsap Declaration, prohibiting government officials from enforcing the challenged restrictions would increase the demand for falconry permits and raptors in a potentially significant way. *See* Millsap Decl. (ECF 68-2) ¶¶ 11, 17. This would be driven both by individuals interested in acquiring raptors to use in

for-profit commercial ventures as well as an increase in the incentive for unlicensed take of wild raptors. *See id.* Although the precise impact on individual species is difficult to predict, even a moderate increase in the number of permitted falconers could have potentially significant consequences. *See id.* USFWS likely would take regulatory action to mitigate any negative effects on wild raptor populations, but the regulatory process takes time, and the potential for negative effects on local raptor populations would still exist. *See id.* ¶¶ 17-18. Given the important ecological role native wild raptors play in ecosystems throughout the country as apex predators, a decrease in native raptor populations at any scale could negatively affect those ecosystems in unpredictable ways. *See id.* ¶ 18. Moreover, reversing wild raptor population decreases would take years and would be expensive. *See id.* ¶ 19. These important and potentially significant ecological and conservation consequences weigh heavily against issuing preliminary relief.

In contrast, if the preliminary injunction is denied and plaintiffs ultimately prevail on some or all of their First Amendment claims, plaintiffs will not be permitted to engage in certain speech activities until the merits of the litigation are resolved. This impact on plaintiffs is mitigated, however, by several factors. First, plaintiffs have provided only generalized indications concerning their plans to engage in making movies, commercials, or other activities covered by the regulations. There is no indication of any imminent project plaintiffs plan to undertake. *See* ECF 17-2 (Decl. of Peter Stavrianoudakis) ¶ 38 ("If I had the chance to earn money with Ares and take him out onto a movie set for a shoot, I would absolutely do it."); ECF 17-5 ¶ 18 (Decl. of Ron Kearney) ("But for the speech rules, I would allow my birds to be filmed and photographed for non-falconry related speech and I would pursue opportunities to speak about falconry, including speaking for pay."); ECF 17-4 ¶ 21 (Decl. of Scott Timmons) ("I do my best to be a positive ambassador for the sport. I would have more opportunities to take on this role if not for these regulations."); *id.* ¶¶ 10, 18, 22- 24 (referring to past opportunities Timmons turned down because of the challenged regulations but not identifying specific future plans or explaining how those plans violated the challenged federal regulations).[3] Moreover, to the extent plaintiffs wish to pursue

---

[3] Timmons' declaration also appears to refer to restrictions on his use of raptors under an abatement permit. *See* ECF 17-4 ¶¶ 11-16, 19-20. But the restrictions at issue in this case relate to raptors possessed under a falconry permit. Plaintiffs have not brought any challenges to regulations, whether state or federal, that govern use of raptors for abatement.

immediate opportunities, they currently are free to use any number of widely available non-native raptors to do so.  *See* Millsap Decl. (ECF 68-2) ¶ 15.

Second, plaintiffs delayed bringing this lawsuit for a decade after the federal regulations took effect in 2008 and some four years after California state officials assumed control of falconry licensing in 2014.  This lawsuit was not filed until late 2018.  Even after the suit was filed, plaintiffs delayed nearly two additional months before seeking injunctive relief.[4]  Such a long delay in pursuing injunctive relief weighs against granting preliminary relief.  *See Oakland Tribune, Inc. v. Chronicle Pub. Co., Inc.*, 762 F.2d 1374, 1377 (9th Cir. 1985) ("Plaintiff's long delay before seeking a preliminary injunction implies a lack of urgency and irreparable harm.").  This is true even taking into account that the present case involves constitutional issues, given the length of the delay and the lack of federal involvement in issuing the plaintiffs' falconry licenses.

Weighing these factors, the potentially permanent negative ecological and environmental consequences that could arise from enjoining the challenged regulations outweigh plaintiffs' interests in obtaining preliminary relief.  This is especially so given that plaintiffs can use non-native raptor species to make movies or engage in other prohibited activities, and given their decade-long delay in seeking relief after the regulations took effect.

For these reasons as well as the reasons in the Federal Defendants' motion to dismiss, the Court should dismiss plaintiffs' constitutional claims against the Federal Defendants for lack of jurisdiction or failure to state a claim, and deny plaintiffs' motion for a preliminary injunction.

//
//
//
//
//
//

---

[4] For purposes of this argument, the Federal Defendants rely only on the delay between the filing of the suit in October 2018 and the lapse of federal appropriations on December 21, 2018.  The preliminary injunction motion was filed on January 28, 2019.  The delay between December 21, 2018, and January 28, 2019, was reasonable in light of the federal government's appropriations lapse.

Respectfully submitted,

Dated:  March 25, 2020

McGREGOR W. SCOTT
United States Attorney

By: */s/ Philip A. Scarborough*
PHILIP A. SCARBOROUGH
Assistant United States Attorney

Attorneys for Defendant U.S. Fish & Wildlife Service and Aurelia Skipwith