UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PETER STAVRIANOUDAKIS, ET AL., | Case No. 1:18-cv-01505 JLT BAM |
| Plaintiffs, | **ORDER DEFERRING DECISION ON THE DEFENDANTS' MOTION TO STAY** |
| v. | |
| U.S. DEPARTMENT OF FISH & WILDLIFE, et al. | (Doc. 138) |
| Defendants. | |

## **INTRODUCTION**

The remaining claim in this case on remand challenges state regulations that require applicants for falconry licenses to consent in writing to the unannounced, warrantless inspection of their property and records. As the Ninth Circuit explained, because the California Department of Fish and Wildlife (CDFW) conditions falconry licenses on applicants' annual written certification that they "understand, and agree to abide by, all conditions of this license," which includes consent to unannounced, warrantless inspections, being required to consent to those inspections "amounts to the relinquishment of Fourth Amendment Rights" sufficient to allege injury in fact for standing purposes. *Stavrianoudakis v. U.S. Fish & Wildlife Serv.*, 108 F.4th 1128, 1137–38 (9th Cir. 2024). Crucial to the Ninth Circuit's reasoning was that "[t]he Falconers suffer this injury every time they renew their licenses, whether or

1

1  not they are actually subjected to any unlawful inspections." *Id*. at 1138. "The separate question of
2  whether an unannounced, warrantless inspection by CDFW would violate the Fourth Amendment" was
3  not decided because that question has not been presented in the pleadings. *See id*.

4  After the mandate issued (Doc. 126), the Court directed the parties to submit a proposed
5  scheduling order on or before November 1, 2024. (Doc. 133.) Instead, the parties submitted a joint status
6  report, wherein CDFW informally requested a stay of this litigation while it considered arguably
7  relevant amendments to the applicable regulations. (Doc. 136.) In response, the Court entered a
8  temporary stay and ordered CDFW to file a formal motion to stay the case. (Doc. 137.) CDFW filed that
9  motion on December 6, 2024. (Doc. 138.) Plaintiffs oppose continuation of the stay (Doc. 139), and
10 CDFW replied. (Doc. 140.) In addition, on February 20, 2025, CDFW filed a status report providing an
11 update on the progress of the planned regulatory change. (Doc. 141.) The matter was taken under
12 submission on the papers pursuant to Local Rule 230(g). For the reasons set forth below, ruling on this
13 motion is deferred.

## ANALYSIS

15 In deciding whether to issue a stay, the Court applies the standard set forth in *Landis v. North
16 American Co*., 299 U.S. 248, 254 (1936). In the context of a *Landis* stay request, courts in the Ninth
17 Circuit weigh the "competing interests which will be affected by the granting or refusal to grant a stay,"
18 including: "[1] the possible damage which may result from the granting of a stay, [2] the hardship or
19 inequity which a party may suffer in being required to go forward, and [3] the orderly course of justice
20 measured in terms of the simplifying or complicating of issues, proof, and questions of law which could
21 be expected to result from a stay." *Lockyer v Mirant*, 398 F.3d 1098, 1110 (9th Cir. 2005) (quoting
22 *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962)).

**A.    Orderly Course of Justice**

24 The thrust of CDFW's motion is that it would be a waste of judicial and party resources to
25 proceed with this litigation because the agency is in the process of making material amendments to a
26 critical component of the challenged regulations. Currently, the California Code of Regulations requires
27 licensed falconers to execute a certification each year that contains the following language:

> Signed Certification. Each application shall contain a certification worded as follows: "I certify that I have read and am familiar with both the California and U.S. Fish and Wildlife Service falconry regulation, CFR 50, Sections 21.29 through 21.30, and that the information I am submitting is complete and accurate to the best of my knowledge and belief. I understand that any false statement herein may subject me to cancellation of the application, suspension or revocation of a license, and/or administrative, civil, or criminal penalties. I understand that my facilities, equipment, or raptors are subject to unannounced inspection pursuant to subsection 670(j), Title 14, of the California Code of Regulations. I certify that I have read, understand, and agree to abide by, all conditions of this license, the applicable provisions of the Fish and Game Code, and the regulations promulgated thereto. I certify that there are no pending or previous legal or administrative proceedings that could disqualify me from obtaining this license." The application shall be submitted with the applicant's original signature.

Cal. Code Regs. tit. 14, § 670(e)(2)(D).

On October 15, 2024, the California Fish and Game Commission, which has authority to adopt regulations on this subject, *see* Cal. Fish & Game Code § 395, agreed to consider CDFW's proposal to delete the challenged certification language. (*See* Doc. 138 at 4.; Doc. 138-1, Declaration of David Kiene, ¶ 2.) Though CDFW's opening brief indicated it was proposing only to delete the sentence "I understand that my facilities, equipment, or raptors are subject to unannounced inspection pursuant to subsection 670(j), Title 14, of the California Code of Regulations," its reply brief explained that CDFW later expanded the proposed changes to delete additional language as follows:

> Signed Certification. Each application shall contain a certification worded as follows: "I certify that I have read and am familiar with both the California and U.S. Fish and Wildlife Service falconry regulation, CFR 50, Sections 21.29 through 21.30, and that the information I am submitting is complete and accurate to the best of my knowledge and belief. I understand that any false statement herein may subject me to cancellation of the application, suspension or revocation of a license, and/or administrative, civil, or criminal penalties. ~~I understand that my facilities, equipment, or raptors are subject to unannounced inspection pursuant to subsection 670(j), Title 14, of the California Code of Regulations.~~ I certify that I have read, understand, and agree to abide by, all conditions of this license~~, the applicable provisions of the Fish and Game Code, and the regulations promulgated thereto~~. I certify that there are no pending or previous legal or administrative proceedings that could disqualify me from obtaining this license." The application shall be submitted with the applicant's original signature.

(Doc. 140 at 4.) Formal procedural steps to effectuate these changes have been undertaken or are anticipated to take place in the coming months. (*See generally* Doc. 138-1.) Initially, CDFW anticipated the amended regulation would go into effect in April 2026. (*Id*., ¶ 4.) More recent information suggests

an even more rapid timeline is possible, with the regulation potentially going into effect in September or November 2025. (*See* Doc. 140-1, Second Declaration of David Kien, ¶ 4; Doc. 141.)[1] CDFW anticipates that if the proposed changes are adopted, CDFW will then move to dismiss the remaining claim as moot. (Doc. 138 at 5.)

In opposition, Plaintiffs make several arguments. First, they maintain that the motion to stay should be denied because it "rests solely on the notion of an amendment . . . the final language of which is unknown." (Doc. 139 at 5.) To the extent Plaintiffs mean to suggest that the record of the proposed amendment is insufficiently specific, the Court disagrees. The proposal and the procedural status of that proposal are reasonably clear, and CDFW has given a reasonably specific estimate of when the regulatory process is likely to conclude.

Second, Plaintiffs argue that the proposed amendment would not moot Plaintiffs' lawsuit because it "does not rescind the unconstitutional search condition that attaches to falconers' licenses." (Doc. 139 at 5.) Most relevant is Plaintiffs' argument that "the proposed amendment does not rescind either the license requirement of subsection (a)(1) or the search powers of subsection (j) that form the basis for the unconstitutional search condition acknowledged by subsection (e)(2)(D)." (*Id.*)[2] Subsection (a)(1) requires that "[a]ny person who wants to engage in falconry activities shall first apply for and be issued an annual falconry license from the [CDFW]," while subsection (j)(3)(A) provides:

> The department may conduct unannounced visits to inspect facilities, equipment, or raptors possessed by the licensee, and may enter the facilities of any licensee when the licensee is present during a reasonable time of the day and on any day of the week. The department may also inspect, audit, or copy any permit, license, book, or other record required

---

[1] Plaintiffs argue that the steps required to complete the amendment process are "more protracted than Defendant's brief admits." (Doc. 139 at 11.) Plaintiffs generically describe all the required steps (*id*. at 11–12), but do not specifically indicate which step is unlikely to be completed on the timeline outlined in the sworn declaration of an attorney employed in CDFW's Office of the General Counsel. (*See* Doc. 140-1.)

[2] Plaintiffs also argue that despite the amendments, they "would still be required, under the express language of 14 C.C.R. § 670 and under language from 50 C.F.R. § 21.82 (which § 670(a)(4) expressly incorporates) to agree in writing that their properties are subject to unannounced, warrantless searches." (Doc. 139 at 5.) This argument appears to be grounded upon language in the current signed certification requirement that requires licensees to "certify that [they] have read, understand, and agree to abide by, all conditions of this license, the applicable provisions of the Fish and Game Code, and the regulations promulgated thereto." Because CDFW's reply indicates that it now is seeking to remove that language from the certification as well, the amended regulation, if approved, will no longer incorporate by reference <u>into the written certification</u> the Fish and Game Code's separate authorization to CDFW to conduct unannounced, warrantless searches contained in Cal. Code Regs. tit. 14, § 670(j)(3)(A).

4

> to be kept by the licensee under these regulations at any time. The department may deny the issuance of, or immediately suspend, the license of a licensee who refuses to be available to participate in a facility inspection or who refuses to allow inspection of a facility, license, book, or other record required to be kept by the licensee. A refusal to allow inspection may be inferred if, after reasonable attempts by the department, the licensee is unavailable for inspection. The department may reinstate a license suspended pursuant to this subsection if the licensee allows the department to inspect the facility, license, book, or other record, and no violations of these regulations or any license conditions are observed during that inspection.

Notwithstanding that this language will remain in the regulatory framework, CDFW insists that the remaining claim in this pre-enforcement[3] case is moot simply based upon the amendments to the signed certification provision, because those amendments will ensure that no unconstitutional condition will remain <u>in the required written licensing certification</u>. (*See* Doc. 140 at 5.) On preliminary review, the Court agrees with CDFW and has serious doubts about the continued viability of a claim premised solely upon the language in subsections (a)(1) and/or (j)(3)(A) in the absence of any requirement that falconers certify consent to those provisions in writing. The Ninth Circuit explicitly held that the Falconer's direct challenge to regulations containing such authorization fails "because they have not alleged that they were subjected to warrantless inspection under the challenged regulations." *Stavrianoudakis*, 108 F.4th at 1141–43. Regardless, CDFW is also correct that now is not the time to fully litigate the issue of mootness; rather, that issue can most efficiently be addressed if and when the regulatory language has settled. (*See* Doc. 140 at 5.) The amendments may ultimately moot the remaining claim in the case by, for example, making it impossible for Plaintiffs to demonstrate standing.[4] But even if Plaintiffs are correct that the proposed amendment will not entirely moot their

---

[3] As the Ninth Circuit noted, these Plaintiffs lack standing to bring their unannounced inspection claims because even though they may have experienced one past warrantless inspection several years before the case was filed and these "[p]ast wrongs may serve as evidence of a real and immediate threat of repeated injury, they are insufficient on their own to support standing for prospective relief." *Stavrianoudakis*, 108 F. 4th at 1144 (cleaned up); *see also* Doc. 64, ¶ 22 (Second Amended Complaint, indicating that Plaintiffs seek only prospective declaratory and injunctive relief, not monetary damages).

[4] Cal. Code Regs. tit. 14, § 670(a)(4) incorporates by reference the federal falconry regulations located at 50 C.F.R. § 21.82, which in turn provides at § 21.82(d)(2)(ii):

> (ii) You must submit to your State, tribal, or territorial agency that regulates falconry a signed and dated statement showing that you agree that the falconry facilities and raptors may be inspected without advance notice by State, tribal (if applicable), or territorial authorities at any reasonable time of day, but you must be present.

5

claim, the changed regulatory language will invariably alter the arguments that can be made on the merits. For reason alone, judicial and party efficiency will benefit from a stay.

Plaintiffs' advance a related argument why the Commission may not adopt the proposed amendment:

> Further, there are strong reasons that the Commission, OAL, and interested parties will strongly oppose the amendment, resulting in its never being adopted. The most likely and animating reason is that the Code of Federal Regulations requires the certification that Defendant claims will be eliminated by its amendment. *See supra* Part I. The result of California regulations falling out of compliance with federal law could be the entire California falconry licensing power being suspended by the federal government—and the consequent surrendering of all birds regulated pursuant to the Migratory Bird Treaty Act within the state. See 50 C.F.R. § 21.82(b)(1)(ii) ("State, tribe, or territorial laws may be more restrictive than these Federal standards but may not be less restrictive."); § 21.82(b)(5)(i) ("We may propose to suspend, and may suspend, the approval of a State, tribal, or territorial falconry program in accordance with the procedures in paragraph (b)(5)(ii) of this section if we determine that the State, tribe, or territory has deficiencies in one or more items in paragraph (b)(4) of this section.").

(Doc. 139 at 13.) The Court is not able to predict the outcome of the amendment process and that is precisely the point. A stay would allow that process to play out without expending judicial or party resources briefing and deciding claims while the ground beneath them continues to shift.

## B. <u>Balance of the Equities</u>

The Court has also considered the Parties' equitable arguments. On the one hand, CDFW argues it would be a hardship for it to proceed with this litigation "when CDFW has taken active steps to delete the language that is germane to this litigation," because "CDFW, as a state agency that is publicly funded, has finite resources and it would be an extreme waste of public funds to require CDFW to defend a lawsuit that could be moot in [under] a year." (Doc. 139 at 5.)

On the other hand, Plaintiffs argue that even if the amendments proposed by CDFW do moot their claim, the amendments will come "100 days too late" because at the earliest they will become effective on October 8, 2025, while Plaintiffs will be required to "again submit in writing to warrantless

---

Plaintiffs correctly point out that CDFW makes no mention of this provision. (Doc. 139 at 10.) Plaintiff argues that it "has the same effect as the language Defendant identifies for removal." (*Id*.) Again, this argument seems to be premised on the incorporation by reference language that CDFW now proposes to remove from the signed certification regulation.

6

searches of their private properties by June 30, 2025, to retain their licenses and birds." Doc. 139 at 10 (Cal. Fish & Game Code § 396).

In response, CDFW argues that even if a stay is not imposed, it is unlikely that there is sufficient time for discovery to be concluded, briefing completed, and a merits decision issued by June 30, 2025. (Doc. 140 at 6.) Realistically, CDFW is correct about the likely timing of a ruling from this Court. Even if the parties could complete discovery[5] and briefing in the next few months, this Court's ongoing judicial resource emergency and resulting backlog of civil cases makes it highly unlikely that the resulting motions would be resolved by June 30.

Nonetheless, CDFW appears content to make Plaintiffs execute a signed certification on June 30, 2025, even though *its own proposed amended regulation* seems to concede that language is unlawful. This does not make sense. Nor does it make sense to force this litigation to merits briefing while a potentially dispositive amendment is pending.

In the Court's experience, this is the kind of practical problem that judicial intervention is ill suited to address. In contrast, the Parties could conserve resources and avoid harm to Plaintiffs in 2025. For example, they could stipulate to temporarily suspend the certification language, they could take action that would preclude CDFW from relying on the certification as it relates to the "search term" at issue here or they could take other action to accomplish the goals of the amendment without awaiting its adoption. Therefore, the Court **ORDERS**:

///
///
///
///
///

---

[5] Plaintiffs suggest discovery could be expedited and that briefing could be limited. (Doc. 139 at 14.) But CDFW contends that full discovery would be required, requiring six to twelve months. (Doc. 140 at 8.) The Court suspects that the time needed lies somewhere in the middle, which likely would push briefing and resolution past June 30. Plaintiffs further argue and that "[t]he fact that this case has proceeded for so long without resolution should incentivize a swifter resolution, not further delay." (Doc. 139 at 14.) All parties have been made aware of this Court's resource issues, including its extraordinarily heavy criminal caseload which it is statutorily required to prioritize. Given this, an equally colorable argument exists that the Court should not expend its extremely limited judicial resources deciding a case that may soon become moot.

1. Ruling on the motion to stay is **DEFERRED**.

2. The parties **SHALL** meet and confer to address the Court's concerns. **Within 21 days** of the date of this order, the parties **SHALL** file a joint status report on the progress of those discussions. If that report suggests agreement cannot be reached, the Court will return its attention to this motion and consider other action such as permitting limited, expedited discovery to facilitate the filing of a narrow motion for preliminary injunction.

IT IS SO ORDERED.

Dated: __**March 17, 2025**__                             /s/ Jennifer L. Thurston
                                                                    UNITED STATES DISTRICT JUDGE