UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PETER STAVRIANOUDAKIS, ET AL., | Case No. 1:18-cv-01505 JLT BAM |
| Plaintiffs, | **ORDER GRANTING MOTION TO STAY** |
| v. | (Doc. 138) |
| U.S. DEPARTMENT OF FISH & WILDLIFE, et al. | |
| Defendants. | |

## **INTRODUCTION**

The remaining claim in this case on remand challenges state regulations that require applicants for falconry licenses to consent in writing to the unannounced, warrantless inspection of their property and records. As the Ninth Circuit explained, because the California Department of Fish and Wildlife (CDFW) conditioned falconry licenses on applicants' annual written certification that they "understand, and agree to abide by, all conditions of this license," which includes consent to unannounced, warrantless inspections, being required to consent to those inspections "amounts to the relinquishment of Fourth Amendment Rights" sufficient to allege injury in fact for standing purposes. *Stavrianoudakis v. U.S. Fish & Wildlife Serv*., 108 F.4th 1128, 1137–38 (9th Cir. 2024). Crucial to the Ninth Circuit's reasoning was that "[t]he Falconers suffer this injury every time they renew their licenses, whether or

not they are actually subjected to any unlawful inspections." *Id*. at 1138. "The separate question of whether an unannounced, warrantless inspection by CDFW would violate the Fourth Amendment" was not decided because that question has not been presented in the pleadings. *See id*.

After the mandate issued (Doc. 126), the Court directed the parties to submit a proposed scheduling order on or before November 1, 2024. (Doc. 133.) Instead, the parties submitted a joint status report, wherein CDFW informally requested a stay of this litigation while it considered arguably relevant amendments to the applicable regulations. (Doc. 136.) In response, the Court entered a temporary stay and ordered CDFW to file a formal motion to stay the case. (Doc. 137.) CDFW filed that motion on December 6, 2024. (Doc. 138.) Plaintiffs oppose continuation of the stay (Doc. 139), and CDFW replied. (Doc. 140.) In addition, on February 20, 2025, CDFW filed a status report providing an update on the progress of the planned regulatory change. (Doc. 141.)

On March 17, 2025, the Court entered an order preliminarily evaluating the stay request but deferring a final ruling to give the parties an opportunity to discuss ways to avoid harm to the Plaintiffs while the proposed amendments were working their way through the administrative approval process. (Doc. 142.) According to a joint status report filed April 7, 2025, notwithstanding the fact that the proposed amendments to the regulations have yet to be adopted, CDFW has already made modifications to the certification language in the currently operative applications for falconers. (Doc. 143 at 2.) As explained in greater detail below, CDFW maintains that these changes will alleviate any potential harm to Plaintiffs while the regulatory process proceeds. (*Id*.) Plaintiffs disagree and insist that the changes to the licensing language are insufficient. (*Id*. at 2–3.) For the reasons discussed herein, the Court will **GRANT** the motion to stay.

## ANALYSIS

In deciding whether to issue a stay, the Court applies the standard set forth in *Landis v. North American Co*., 299 U.S. 248, 254 (1936). In the context of a *Landis* stay request, courts in the Ninth Circuit weigh the "competing interests which will be affected by the granting or refusal to grant a stay," including: "[1] the possible damage which may result from the granting of a stay, [2] the hardship or inequity which a party may suffer in being required to go forward, and [3] the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could

2

be expected to result from a stay." *Lockyer v Mirant*, 398 F.3d 1098, 1110 (9th Cir. 2005) (quoting *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962)).

**A.  Orderly Course of Justice**

The thrust of CDFW's motion is that it would be a waste of judicial and party resources to proceed with this litigation because the agency is in the process of making material amendments to a critical component of the challenged regulations. Currently, the California Code of Regulations requires licensed falconers to execute a certification each year that contains the following language:

> Signed Certification. Each application shall contain a certification worded as follows: "I certify that I have read and am familiar with both the California and U.S. Fish and Wildlife Service falconry regulation, CFR 50, Sections 21.29 through 21.30, and that the information I am submitting is complete and accurate to the best of my knowledge and belief. I understand that any false statement herein may subject me to cancellation of the application, suspension or revocation of a license, and/or administrative, civil, or criminal penalties. I understand that my facilities, equipment, or raptors are subject to unannounced inspection pursuant to subsection 670(j), Title 14, of the California Code of Regulations. I certify that I have read, understand, and agree to abide by, all conditions of this license, the applicable provisions of the Fish and Game Code, and the regulations promulgated thereto. I certify that there are no pending or previous legal or administrative proceedings that could disqualify me from obtaining this license." The application shall be submitted with the applicant's original signature.

Cal. Code Regs. tit. 14, § 670(e)(2)(D).

On October 15, 2024, the California Fish and Game Commission, which has authority to adopt regulations on this subject, *see* Cal. Fish & Game Code § 395, agreed to consider CDFW's proposal to delete the challenged certification language. (*See* Doc. 138 at 4.; Doc. 138-1, Declaration of David Kiene, ¶ 2.) Though CDFW's opening brief indicated it was proposing only to delete the sentence "I understand that my facilities, equipment, or raptors are subject to unannounced inspection pursuant to subsection 670(j), Title 14, of the California Code of Regulations," its reply brief explained that CDFW later expanded the proposed changes to delete additional language as follows:

> Signed Certification. Each application shall contain a certification worded as follows: "I certify that I have read and am familiar with both the California and U.S. Fish and Wildlife Service falconry regulation, CFR 50, Sections 21.29 through 21.30, and that the information I am submitting is complete and accurate to the best of my knowledge and belief. I understand that any false statement herein may subject me to cancellation of the application, suspension or revocation of a license, and/or

3

> administrative, civil, or criminal penalties. ~~I understand that my facilities, equipment, or raptors are subject to unannounced inspection pursuant to subsection 670(j), Title 14, of the California Code of Regulations.~~ I certify that I have read, understand, and agree to abide by, all conditions of this license~~, the applicable provisions of the Fish and Game Code, and the regulations promulgated thereto~~. I certify that there are no pending or previous legal or administrative proceedings that could disqualify me from obtaining this license." The application shall be submitted with the applicant's original signature.

(Doc. 140 at 4.) Formal procedural steps to effectuate these changes have been undertaken or are anticipated to take place in the coming months. (*See generally* Doc. 138-1.) Initially, CDFW anticipated the amended regulation would go into effect in April 2026. (*Id.*, ¶ 4.) More recent information suggests an even more rapid timeline is possible, with the regulation potentially going into effect in September or November 2025. (*See* Doc. 140-1, Second Declaration of David Kien, ¶ 4; Doc. 141.)[1] CDFW anticipates that if the proposed changes are adopted, CDFW will then move to dismiss the remaining claim as moot. (Doc. 138 at 5.)

In opposition, Plaintiffs make several arguments. First, they maintain that the motion to stay should be denied because it "rests solely on the notion of an amendment . . . the final language of which is unknown." (Doc. 139 at 5.) As the Court explained in its March 17, 2025 order, "[t]o the extent Plaintiffs mean to suggest that the record of the proposed amendment is insufficiently specific, the Court disagrees. The proposal and the procedural status of that proposal are reasonably clear, and CDFW has given a reasonably specific estimate of when the regulatory process is likely to conclude." (Doc. 142 at 4.)

Second, Plaintiffs argue that the proposed amendment would not moot Plaintiffs' lawsuit because it "does not rescind the unconstitutional search condition that attaches to falconers' licenses." (Doc. 139 at 5.) Plaintiffs maintain that "the proposed amendment does not rescind either the license requirement of subsection (a)(1) or the search powers of subsection (j) that form the basis for the unconstitutional search condition acknowledged by subsection (e)(2)(D)." (*Id.*)[2] Subsection (a)(1)

---

[1] Plaintiffs argue that the steps required to complete the amendment process are "more protracted than Defendant's brief admits." (Doc. 139 at 11.) Plaintiffs generically describe all the required steps (*id.* at 11–12), but do not specifically indicate which step is unlikely to be completed on the timeline outlined in the sworn declaration of an attorney employed in CDFW's Office of the General Counsel. (*See* Doc. 140-1.)

[2] Plaintiffs also argue that despite the amendments, they "would still be required, under the express language of 14 C.C.R.

4

requires that "[a]ny person who wants to engage in falconry activities shall first apply for and be issued an annual falconry license from the [CDFW]," while subsection (j)(3)(A) provides:

> The department may conduct unannounced visits to inspect facilities, equipment, or raptors possessed by the licensee, and may enter the facilities of any licensee when the licensee is present during a reasonable time of the day and on any day of the week. The department may also inspect, audit, or copy any permit, license, book, or other record required to be kept by the licensee under these regulations at any time. The department may deny the issuance of, or immediately suspend, the license of a licensee who refuses to be available to participate in a facility inspection or who refuses to allow inspection of a facility, license, book, or other record required to be kept by the licensee. A refusal to allow inspection may be inferred if, after reasonable attempts by the department, the licensee is unavailable for inspection. The department may reinstate a license suspended pursuant to this subsection if the licensee allows the department to inspect the facility, license, book, or other record, and no violations of these regulations or any license conditions are observed during that inspection.

Notwithstanding that this language will remain in the regulatory framework, CDFW insists that the remaining claim in this pre-enforcement[3] case will be rendered moot based upon the proposed amendments to the signed certification provision, because those amendments will ensure that no unconstitutional condition will remain <u>in the required written licensing certification</u>. (*See* Doc. 140 at 5.) As previously indicated (*see* Doc. 142 at 5), the Court agrees with CDFW and has serious doubts about the continued viability of a claim premised solely upon the presence of search authority in subsections (a)(1) and/or (j)(3)(A) in the absence of any requirement that falconers certify consent to those provisions in writing.[4] The Ninth Circuit explicitly held that the Falconer's direct challenge to

---

§ 670 and under language from 50 C.F.R. § 21.82 (which § 670(a)(4) expressly incorporates) to agree in writing that their properties are subject to unannounced, warrantless searches." (Doc. 139 at 5.) This argument appears to be grounded upon language in the previously operative certification requirement that requires licensees to "certify that [they] have read, understand, and agree to abide by, all conditions of this license, the applicable provisions of the Fish and Game Code, and the regulations promulgated thereto." However, the most recent status report indicates that CDFW has already removed that language from the certification. (*See* Doc. 143 at 2.)

[3] As the Ninth Circuit noted, these Plaintiffs lack standing to bring their unannounced inspection claims because even though they may have experienced one past warrantless inspection several years before the case was filed and these "[p]ast wrongs may serve as evidence of a real and immediate threat of repeated injury, they are insufficient on their own to support standing for prospective relief." *Stavrianoudakis*, 108 F. 4th at 1144 (cleaned up); *see also* Doc. 64, ¶ 22 (Second Amended Complaint, indicating that Plaintiffs seek only prospective declaratory and injunctive relief, not monetary damages).

[4] Cal. Code Regs. tit. 14, § 670(a)(4) incorporates by reference the federal falconry regulations located at 50 C.F.R. § 21.82, which in turn provides at § 21.82(d)(2)(ii):

5

regulations containing such authorization fails "because they have not alleged that they were subjected to warrantless inspection under the challenged regulations." *Stavrianoudakis*, 108 F.4th at 1141–43. Moreover, even if Plaintiffs are correct that the proposed amendment will not entirely moot their claim, the changed regulatory language will alter the arguments that can be made on the merits. For that reason alone, judicial and party efficiency will benefit from a stay.

Plaintiffs' advance a related argument why the Commission may not adopt the proposed amendment:

> Further, there are strong reasons that the Commission, OAL, and interested parties will strongly oppose the amendment, resulting in its never being adopted. The most likely and animating reason is that the Code of Federal Regulations requires the certification that Defendant claims will be eliminated by its amendment. *See supra* Part I. The result of California regulations falling out of compliance with federal law could be the entire California falconry licensing power being suspended by the federal government—and the consequent surrendering of all birds regulated pursuant to the Migratory Bird Treaty Act within the state. See 50 C.F.R. § 21.82(b)(1)(ii) ("State, tribe, or territorial laws may be more restrictive than these Federal standards but may not be less restrictive."); § 21.82(b)(5)(i) ("We may propose to suspend, and may suspend, the approval of a State, tribal, or territorial falconry program in accordance with the procedures in paragraph (b)(5)(ii) of this section if we determine that the State, tribe, or territory has deficiencies in one or more items in paragraph (b)(4) of this section.").

(Doc. 139 at 13.) As the Court previously indicated, it "is not able to predict the outcome of the amendment process and that is precisely the point. A stay would allow that process to play out without expending judicial or party resources briefing and deciding claims while the ground beneath them continues to shift." (Doc. 142 at 6.)

**B.     Balance of the Equities**

The Court has also considered the Parties' equitable arguments. On the one hand, CDFW argues it would be a hardship for it to proceed with this litigation "when CDFW has taken active steps to

---

> (ii) You must submit to your State, tribal, or territorial agency that regulates falconry a signed and dated statement showing that you agree that the falconry facilities and raptors may be inspected without advance notice by State, tribal (if applicable), or territorial authorities at any reasonable time of day, but you must be present.

Plaintiffs correctly point out that CDFW makes no mention of this provision. (Doc. 139 at 10.) Plaintiff argues that it "has the same effect as the language Defendant identifies for removal." (*Id*.) Again, this argument seems to be premised on the incorporation by reference language that CDFW has now removed from the certification.

6

delete the language that is germane to this litigation," because "CDFW, as a state agency that is publicly funded, has finite resources and it would be an extreme waste of public funds to require CDFW to defend a lawsuit that could be moot in [under] a year." (Doc. 139 at 5.) CDFW also maintains that even if a stay is not imposed, it is unlikely that there is sufficient time for discovery to be concluded, briefing completed, and a merits decision issued by June 30, 2025, the date by which the Plaintiffs must re-certify to maintain their licenses. (Doc. 140 at 6.) Realistically, CDFW is correct about the likely timing of a ruling from this Court. Even if the parties could complete discovery[5] and briefing in the next few months, this Court's ongoing judicial resource emergency and resulting backlog of civil cases makes it highly unlikely that the resulting motions would be resolved by June 30.

On the other hand, Plaintiffs argued—at least initially—that even if the amendments proposed by CDFW do moot their claim, the amendments will come "100 days too late" because at the earliest they will become effective on October 8, 2025, while Plaintiffs will be required to "again submit in writing to warrantless searches of their private properties by June 30, 2025, to retain their licenses and birds." Doc. 139 at 10 (Cal. Fish & Game Code § 396). Originally, the Court expressed concern about this because:

> CDFW appears content to make Plaintiffs execute a signed certification on June 30, 2025, even though *its own proposed amended regulation* seems to concede that language is unlawful. This does not make sense. Nor does it make sense to force this litigation to merits briefing while a potentially dispositive amendment is pending.

(Doc. 142 at 7.) The Court noted that "this is the kind of practical problem that judicial intervention is ill suited to address," and thus put it to the Parties to attempt to reach a resolution that would "conserve resources <u>and</u> avoid harm to Plaintiffs in 2025." (*Id.*)

In response, CDFW has now taken steps to modify the license language even though the related regulation has yet to be formally approved. (Doc. 143 at 2.) Going forward, applicants will certify as

---

[5] Plaintiffs suggest discovery could be expedited and that briefing could be limited. (Doc. 139 at 14.) But CDFW contends that full discovery would be required, requiring six to twelve months. (Doc. 140 at 8.) The Court suspects that the time needed lies somewhere in the middle, which likely would push briefing and resolution past June 30. Plaintiffs further argue and that "[t]he fact that this case has proceeded for so long without resolution should incentivize a swifter resolution, not further delay." (Doc. 139 at 14.) All parties have been made aware of this Court's resource issues, including its extraordinarily heavy criminal caseload which it is statutorily required to prioritize. Given this, an equally colorable argument exists that the Court should not expend its extremely limited judicial resources deciding a case that may soon become moot.

follows:

> I certify that I have read and am familiar with both the California and U.S. Fish and Wildlife Service falconry regulation, CFR 50, Sections 21.29 through 21.30, and that the information I am submitting is complete and accurate to the best of my knowledge and belief. I understand that any false statement herein may subject me to cancellation of the application, suspension or revocation of a license, and/or administrative, civil, or criminal penalties. ~~I understand that my facilities, equipment, or raptors are subject to unannounced inspection pursuant to subsection 670(j), Title 14, of the California Code of Regulations.~~ I certify that I have read, understand, and agree to abide by, all conditions of this license~~, the applicable provisions of the Fish and Game Code, and the regulations promulgated thereto~~. I certify that there are no pending or previous legal or administrative proceedings that could disqualify me from obtaining this license.

(*Id.*) This indeed appears to address the central issue underpinning Plaintiff's precertification claim: whether an unconstitutional condition will remain <u>in the required written licensing certification</u>. Plaintiffs insist that their harm remains because they must certify that they "have read, understand, and agree to abide by all conditions <u>of this license</u>," and that this necessarily implicates § 670(j)(3)(a) which provides that "the department may conduct unannounced visits to inspect facilities, equipment, or raptors possessed by the licensee," even though any direct reference to § 670(j) has been deleted from the certification. (Doc. 143 at 2–3.) This again disregards the injury that forms the basis of Plaintiffs' standing to pursue the remaining unconstitutional conditions claim. While Plaintiffs' "direct challenge" to the unannounced inspections provisions in California law "fails because they have not alleged that they were subjected to warrantless inspection under the challenged regulations," *Stavrianoudakis*, 108 F.4th at 1141, Plaintiffs had standing to pursue their unconstitutional conditions claim because:

> The Falconers' alleged injury in fact is the forced choice: retention of their Fourth Amendment rights or receipt of a falconry license, which is required to lawfully practice falconry. Cal. Code Regs. tit. 14, § 670(a)(1); *see Blackburn v. Snow*, 771 F.2d 556, 568 (1st Cir. 1985) (rejecting prison regulation requiring visitors to choose between submitting to a strip search or forgoing entry because "it is the very choice to which the [plaintiff] was put that is constitutionally intolerable—and it was as intolerable the second and third times as the first"). And the Falconers suffer this injury every time they renew their licenses, whether or not they are actually subjected to any unlawful inspections. *Koontz*, 570 U.S. at 606.

*Stavrianoudakis*, 108 F.4th at 1138. This claim was also deemed ripe because the "licensure condition is final and is imposed annually," and Plaintiffs' injury found "not hypothetical" because "when the Falconers apply for a license renewal, they must include the certification that they agree to submit to

warrantless, unannounced inspections." *Id.* at 1139. To now argue that the injury remains simply because they must accept "all conditions of the <u>license</u>" even though the license no longer mentions warrantless, unannounced inspections" glosses over the distinction drawn by the Ninth Circuit between the failed direct challenge and the potentially viable unconstitutional conditions claim. Because of this, the Court finds that the amended certification language alleviates the potential for Plaintiff to be further injured during the pendency of the regulatory amendment process.

In sum, given that a limited stay extending through the conclusion of the ongoing amendment process will conserve party and judicial resources and that Plaintiffs are unlikely to suffer further injury during any such stay, the Court will **GRANT** the motion to stay.

## CONCLUSION AND ORDER

For the reasons set forth above,

1. CDFW's motion to stay this case pending the completion of the ongoing administrative process to amend California Code of Regulations, title 14, section 670, subdivision (e)(2)(D) (Doc. 138) is **GRANTED**.

2. Starting 60 days from the date of this order and every 60 days thereafter or within 14 days of the completion of the amendment process, whichever is sooner, CDFW **SHALL** file a status report outlining the progress of the administrative process. In addition, within 30 days of the completion of the amendment process, the parties **SHALL** meet and confer before filing a joint status report that **SHALL** propose a schedule for moving this litigation forward.

IT IS SO ORDERED.

Dated: **April 18, 2025**

UNITED STATES DISTRICT JUDGE

9