**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| PETER STAVRIANOUDAKIS, ET AL., | Case No. 1:18-cv-01505-JLT-FJS |
| Plaintiffs, | ORDER GRANTING MOTION TO DISMISS THE CASE AS MOOT |
| v. | |
| U.S. DEPARTMENT OF FISH & WILDLIFE, et al., | (Doc. 153) |
| Defendants. | |

## I.   BACKGROUND

The parties are presumably familiar with the facts and history of this case, which the Ninth Circuit summarized on appeal. *Stavrianoudakis v. U.S. Fish & Wildlife Serv.*, 108 F.4th 1128, 1133–36 (9th Cir. 2024). The Ninth Circuit found that Plaintiffs failed to establish Article III standing as to the unconstitutional inspections claim but have standing as to the unconstitutional conditions claim. *Id*. at 1138, 1140–44.

The latter claim involves a challenge to state regulations which require applicants for falconry licenses to provide written consent to unannounced, warrantless inspection of their property and records. (Doc. 142 at 1.) As the Ninth Circuit explained, at the time this lawsuit was filed, the California Department of Fish and Wildlife conditioned the issuance of falconry licenses on applicants' annual written certification that they "understand, and agree to abide by, all conditions of this license," which included consent to unannounced, warrantless inspections. *Stavrianoudakis*, 108 F.4th at 1137–38. The Ninth Circuit found that being required to consent to those inspections "amounts to the relinquishment of Fourth Amendment Rights," which is

1

sufficient to allege injury in fact for standing purposes. *Id*. Crucial to the Ninth Circuit's reasoning was that "[t]he Falconers suffer this injury every time they renew their licenses, whether or not they are actually subjected to any unlawful inspections." *Id*. at 1138.

After the Ninth Circuit issued its mandate, (Doc. 126), CDFW initiated a series of steps to amend the certification challenged by Plaintiffs. (*See generally* Docs. 138-1, 141, 144.) The Amended Certification now reads:

> Signed Certification. Each application shall contain a certification worded as follows: "I certify that I have read and am familiar with both the California and U.S. Fish and Wildlife Service falconry regulations, CFR 50, Sections ~~21.29 through 21.30~~ 21.82 and 21.85, and that the information I am submitting is complete and accurate to the best of my knowledge and belief. ~~I understand that any false statement herein may subject me to cancellation of the application, suspension or revocation of a license, and/or administrative, civil, or criminal penalties. I understand that my facilities, equipment, or raptors are subject to unannounced inspection pursuant to subsection 670(j), Title 14, of the California Code of Regulations~~. I certify that I have read, understand, and agree to abide by~~,~~ all conditions of this license~~, the applicable provisions of the Fish and Game Code, and the regulations promulgated thereto~~. I certify that there are no pending or previous legal or administrative proceedings that could disqualify me from obtaining this license." The application shall be submitted with the applicant's original signature.

(Doc. 148 at 6 (strikethroughs indicate deletions; underlined portions denote additions).)

CDFW now moves to dismiss the case, arguing that the Amended Certification effectively moots Plaintiffs' sole remaining unconstitutional conditions claim. (*See generally* Doc. 153.) Plaintiffs, on the other hand, insist that the amendments are insufficient to moot the case; and, even if they were, the case falls under two exceptions to the mootness doctrine: voluntary cessation and wrong capable of repetition yet evading review. (*See generally* Doc. 155.) For the reasons set forth below, the Court **GRANTS** the pending motion to dismiss.

## II.    LEGAL STANDARD

"Article III of the Constitution limits the jurisdiction of the federal courts to 'Cases' or 'Controversies.'" *Pitts v. Terrible Herbst, Inc.*, 653 F.3d 1081, 1086 (9th Cir. 2011). The Supreme Court has "repeatedly held that an actual [case or] controversy must exist not only at the time the complaint is filed, but through all stages of the litigation." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 90–91 (2013) (internal quotation marks omitted). "A case becomes moot—and

2

therefore no longer a 'Case' or 'Controversy' for purposes of Article III—when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Id.* at 91 (some internal quotation marks omitted).

The "central question" in determining mootness is "whether changes in the circumstances that prevailed at the beginning of litigation have forestalled any occasion for meaningful relief." *Gator.com Corp. v. L.L. Bean, Inc.*, 398 F.3d 1125, 1129 (9th Cir. 2005) (en banc). This question is asked separately for each cause of action. *Chew v. Gates*, 27 F.3d 1432, 1437 (9th Cir. 1994); *see also Chen v. Allstate Ins. Co.*, 819 F.3d 1136, 1144 (9th Cir. 2016) ("[A]n individual claim . . . becomes moot when a plaintiff actually receives all of the relief he or she could receive on the claim through further litigation.") (emphasis removed). "The question is not whether the precise relief sought at the time the case was filed is still available," but rather "whether there can be any effective relief." *Bayer v. Neiman Marcus Grp., Inc.*, 861 F.3d 853, 862 (9th Cir. 2017). "In the context of injunctive relief, a case is not moot if the court is able to 'undo' the effects of the alleged illegal action." *Health Freedom Def. Fund, Inc. v. Carvalho*, 148 F.4th 1020, 1026 (9th Cir. 2025) (en banc) (quoting *Garcia v. Lawn*, 805 F.2d 1400, 1402 (9th Cir. 1986)).

Finally, even if a case appears to be moot, there are "four major exceptions to the mootness doctrine[: ](1) collateral legal consequences; (2) wrongs capable of repetition yet evading review; (3) voluntary cessation; and (4) class actions where the named party ceases to represent the class." *In re Burrell*, 415 F.3d 994, 998 (9th Cir. 2005) (citations omitted).

### III.    DISCUSSION

#### A.  The Wording of the Amended Certification

Plaintiffs' principal contention is that the Amended Certification is not sufficient to render the case moot because Section 670(j)(3)(A) "remains expressly incorporated" into the Amended Certification. (Doc. 155 at 6.) The Court finds this argument unpersuasive because Section 670(j)(3)(A) is no longer "expressly incorporated" into the Amended Certification because the incorporation by reference language—i.e., that applicants "certify that [they] read, understand, and agree to abide by~~,~~ all conditions of this license~~, the applicable provisions of the Fish and Game Code, and the regulations promulgated thereto~~"—was deleted. (*See* Doc. 142 at 4 n.2 (first

3

alteration in original) (strikethroughs indicate deletion); *id*. at 5 n.4.)[1] The Amended Certification now only requires an applicant to agree to "all conditions of this license"—and Plaintiff has advanced no persuasive argument as to *how* "conditions of *this license*" incorporates Section 670(j)(3)(A).

Moreover, Plaintiffs insist that the Amended Certification language is nonetheless problematic because "Section 670(j)(3)(A) *authorizes* CDFW to immediately suspend the license of a falconer who refuses an inspection." (Doc. 155 at 6 (emphasis added).) But *discretionary permission for the government* to conduct unannounced inspections at *some unspecified time in the future* is not the same as requiring a licensee to *immediately* consent to said inspections as a *condition for receiving* a falconry license. Indeed, the Ninth Circuit has already rejected Plaintiffs' argument that they have Article III standing on the "mere speculation that regulators will exercise their [discretionary] inspection authority." *Stavrianoudakis*, 108 F.4th at 1142. The Court declines to endorse Plaintiffs' attempted end-run around the Ninth Circuit's opinion.

**B. Voluntary Cessation**

The Supreme Court has long held that "a defendant cannot automatically moot a case simply by ending its unlawful conduct once sued." *Already*, 568 U.S. at 91. To defeat the "voluntary cessation exception" to mootness, Defendant must establish that "the challenged behavior cannot reasonably be expected to recur." *See id*. at 96. However, federal courts "treat the voluntary cessation of challenged conduct by government officials with more solicitude . . . than similar action by private parties," *Bd. of Trs. of Glazing Health & Welfare Tr. v. Chambers*, 941 F.3d 1195, 1198 (9th Cir. 2019) (en banc) (omission in original) (internal quotation marks omitted), in light of a presumption of good faith which attach to governmental actions, *Rosebrock v. Mathis*, 745 F.3d 963, 971 (9th Cir. 2014) ("We presume that a government entity is acting in good faith when it changes its policy, but when the Government asserts mootness based on such a change it still must bear the heavy burden of showing that the challenged conduct cannot reasonably be expected to start up again." (internal citations omitted)). As the Ninth Circuit

---

[1] If the "conditions of this license" language incorporates Section 670 by reference, then the "applicable provisions of the Fish and Game Code" language would be surplusage. *Cf. Hampton v. California*, 83 F.4th 754, 764 n.3 (9th Cir. 2023).

recently explained, "[t]he government is entitled to a presumption of good faith when it asserts mootness, but it must still demonstrate that the change in its behavior is entrenched or permanent[,]" including "procedural safeguards insulating the new state of affairs from arbitrary reversal and the government's rationale for its changed practice(s)[.]" *Planned Parenthood Great Nw., Hawaii, Alaska, Indiana, Kentucky v. Labrador*, 122 F.4th 825, 841 (9th Cir. 2024) (internal citations and quotation marks omitted); *see Akiachak Native Cmty. v. U.S. Dep't of Interior*, 827 F.3d 100, 113 (D.C. Cir. 2016) (explaining that, as a general matter, "when an agency has rescinded and replaced a challenged regulation, litigation over the legality of the original regulation becomes moot" (collecting cases)); *see also Brach v. Newsom*, 38 F.4th 6, 12 (9th Cir. 2022) (dismissing as moot claims challenging the constitutionality of executive orders by the Governor of California, when they were rescinded via an executive order); *Bd. of Trs. of Glazing Health & Welfare Tr. v. Chambers*, 941 F.3d 1195, 1199 (9th Cir. 2019) (en banc) ("[I]n determining whether a case is moot, we should presume that the repeal, amendment, or expiration of legislation will render an action challenging the legislation moot, unless there is a reasonable expectation that the legislative body will reenact the challenged provision or one similar to it.").

Plaintiffs first argue that governmental entities "retain full authority to restore" the challenged certification requirement. (Doc. 155 at 8.) This argument, however, overlooks the substantial procedural steps that are necessary to amend the certification language. (*See generally* Doc. 138-1.)[2] Indeed, it is the California Fish and Game Commission, which is *not* a party to the instant action, that has the authority to adopt regulations on this subject. *See* Cal. Fish & Game Code § 395(a) The Court therefore disagrees with Plaintiffs' attempt to characterize the Amended Certification as something that may be easily reversed on a whim. (*See* Doc. 155 at 8–9.) Rather, the Court finds the existence of substantial "procedural safeguards insulating the new state of affairs from arbitrary reversal." *See Planned Parenthood*, 122 F.4th at 841.[3]

Plaintiffs also argue that CDFW sought to amend the regulations only as a "strategic

---

[2] Publicly accessible information provides more details on the procedural steps taken: https://nrm.dfg.ca.gov/FileHandler.ashx?DocumentID=232695&inline.

[3] In any case, if the rescission of an executive order may moot a case, then a regulatory amendment may, too, moot a case. *See Brach*, 38 F.4th at 12.

attempt to avoid an adverse merits ruling." (Doc. 155 at 8.)[4] The Court declines to take such a cynical view of the government's motive for amending the certification language.) Plaintiffs seem to ignore binding case law directing federal courts to presume that government actions are carried out in good faith. *See Rosebrock*, 745 F.3d at 971; *Planned Parenthood*, 122 F.4th at 841.

Plaintiffs further argue that because "CDFW's licensing authority for falconry is contingent upon its regulations being consistent with federal standards[,]" CDFW may be required to reverse the Amended Certification. (Doc. 155 at 9–10.) However, Plaintiff's argument requires the Court to assume a speculative chain of events, such as (1) that the federal government would threaten to de-certify the *entire* state licensing regime just because of the certification language; and (2) that the state agencies would decide to comply with the federal demand to reinstate the old certification language rather than having the federal government run its own falconry licensing regime in the state of California. The standing jurisprudence does not permit the Court to make such assumptions and logical leaps, not without further evidence. *Cf. Stavrianoudakis*, 108 F.4th at 1140 & n.4.

## C. The Possibility of Further Relief

Finally, Plaintiffs argue that the case is not moot because this Court could provide further effectual relief—that is, an order enjoining enforcement of section 670(j)(3)(A). (Doc. 155 at 10.) However, because the Ninth Circuit expressly found that Plaintiffs have failed to establish Article III standing to seek an injunction against the enforcement of Section 670(j)(3)(A), it is not a potential relief that this Court could grant to Plaintiffs.

## IV.   CONCLUSION

Based upon the foregoing, the Court **ORDERS**:

---

[4] Plaintiffs' argument that CDFW may reintroduce the Old Certification faster than the litigation can proceed, (Doc. 155 at 9), falls under the voluntary cessation exception, not the wrong-capable-of-repetition-yet-evading-review exception, *see Protectmarriage.com-Yes on 8 v. Bowen*, 752 F.3d 827, 836 (9th Cir. 2014) ("[T]he 'capable of repetition, yet evading review' exception is concerned not with particular lawsuits, but with classes of cases that, absent an exception, would *always* evade judicial review." (citations omitted) (emphasis in original)); *City News & Novelty, Inc. v. City of Waukesha*, 531 U.S. 278, 284 n.1 (2001) (explaining that the voluntary cessation exception "traces to the principle that a party should not be able to evade judicial review, or to defeat a judgment, by temporarily altering questionable behavior").

(1) Defendant's Motion to Dismiss (Doc. 155) is **GRANTED**.

(2) The Clerk of Court is directed to close this case.

IT IS SO ORDERED.

Dated:   **April 25, 2026**

_____
UNITED STATES DISTRICT JUDGE